# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN JOHNSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:13-CV-2046-SNLJ** |
| | ) | |
| **TROY STEELE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

A St. Louis County jury found petitioner Kevin Johnson ("petitioner") guilty of one count of first-degree murder, and the trial court, following the jury's recommendation, sentenced petitioner to death. The Missouri Supreme Court affirmed the conviction and sentence on direct appeal, *State v. Johnson*, 284 S.W.3d 561 (Mo. banc 2009), and later affirmed the denial of petitioner's motion for post-conviction relief, *Johnson v. State*, 406 S.W.3d 892 (Mo. banc 2013). Next, this Court denied petitioner's petition for writ of habeas corpus (#35). *Johnson v. Steele*, No. 4:13-CV-2046-SNLJ, 2018 WL 1083577, at *1 (E.D. Mo. Feb. 28, 2018). Petitioner now asks the Court to alter or amend its memorandum and order that denied the petition for writ of habeas corpus. (#142.) The motion is denied.

Petitioner asks the Court to alter or amend the memorandum and order under Rule 59(e) of the Federal Rules of Civil Procedure. "Motions under Rule 59(e) 'serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence' and 'cannot be used to introduce new evidence, tender new legal

theories, or raise arguments which could have been offered or raised prior to entry of judgment.'" *Ryan v. Ryan*, 889 F.3d 499, 507 (8th Cir. 2018) (*quoting United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)). This Court has broad discretion in deciding the motion. *Id.* at 507–08.

Specifically, petitioner asks the Court to reconsider its rulings on nine of his original twenty-six claims. He also renews his request to amend the habeas petition to add three new claims.

**Claim 2.** In this claim, petitioner argues the prosecutor violated his due process rights when he argued that petitioner committed first-degree murder because petitioner made a "conscious decision" to kill Sgt. McEntee. Petitioner believes this improperly blurred the line between first- and second-degree murder.

Petitioner's trial counsel did not object to the prosecutor's argument, so the issue was not properly preserved for appeal. Thus, on direct appeal, the Missouri Supreme Court reviewed the claim for plain error and found none. *Johnson*, 284 S.W.3d at 574. On habeas review, this Court held that Claim 2 was procedurally defaulted because it was not properly preserved in the trial court. *Johnson*, 2018 WL 1083577, at *4. In so holding, this Court relied on binding Eighth Circuit precedent that held "a federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015). Thus, this Court committed no manifest error of law.

Petitioner then argues, even if the claim is defaulted, he has shown "cause"—his trial counsel's allegedly ineffective assistance of counsel—to excuse the default.

Petitioner is correct that procedural default may be excused if it was the result of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* And as required, petitioner properly exhausted this ineffective assistance of counsel claim in state court. (Indeed, petitioner's habeas Claim 23 raises this very issue, which the Court discusses below.)

So the question is whether the performance of petitioner's trial counsel fell below the objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and, if so, whether counsel's ineffective performance prejudiced petitioner, *id.* at 687. This is a high bar, and defendant cannot meet it. Even if trial counsel provided ineffective assistance (which this Court seriously doubts), this claim still must fail: there's "no reasonable probability that, but for counsel's [failure to object], the result of the proceeding would have been different," *id.* at 694. Indeed, the jury was properly instructed on the element of deliberation. *Johnson*, 406 S.W.3d at 904. And under Missouri law, we assume the jury followed the instruction. *Tisius v. State*, 183 S.W.3d 207, 216 (Mo. banc 2006). During closing argument, the prosecutor read the definition of deliberation (as correctly defined in the statute) and argued why he believed the evidence showed that petitioner deliberated. *Johnson*, 406 S.W.3d at 904–05. Because petitioner's ineffective assistance of counsel claim fails, the procedural default is not cured.

The Court finds no manifest errors of law or fact in its denial of Claim 2.

**Claim 23.** In this claim, petitioner argues that trial counsel provided ineffective assistance of counsel by failing to object to the prosecutor's repeated "misconduct" during closing arguments. Petitioner identified several arguments that his trial counsel should have objected to (#35 at 286–95), one of which was the prosecutor's argument that petitioner made a "conscious decision" to kill, as explained above in Claim 2. On habeas review, this Court held that Claim 23—except for the part related to trial counsel's failure to object to the prosecutor's "conscious decision" argument—was defaulted because petitioner did not raise those parts on post-conviction appeal. *Johnson*, 2018 WL 1083577, at *7. Petitioner does not challenge the defaulted parts of Claim 23.

Instead, petitioner claims the Court improperly rejected the non-defaulted part of Claim 23 "because the Missouri Supreme Court ruled that the prosecutor's 'conscious decision' argument did not amount to 'plain error.'" (#142 at 5.) Not so. In fact, the analysis applying the Antiterrorism and Effective Death Penalty Act ("AEDPA") review standards to the non-defaulted part of Claim 23 was inadvertently omitted from the original memorandum and order. Thus, the Court's memorandum and order denying the habeas petition will be amended to include this analysis.

On post-conviction appeal, the Missouri Supreme Court rejected petitioner's claim that trial counsel provided ineffective assistance by failing to object to the prosecutor's "conscious decision" argument during closing argument. *Johnson*, 406 S.W.3d at 904–05. The Missouri Supreme Court found that petitioner could not show prejudice because (1) the jury was properly instructed and (2) the prosecutor read the definition of deliberation in closing argument. *Id.* On habeas review, petitioner argued that this

decision was an unreasonable application of *Strickland* (#35 at 288). *See* 28 U.S.C. § 2254(d)(1). Because this Court has independently concluded that petitioner cannot satisfy *Strickland*'s prejudice prong, see Claim 2, it necessarily follows that the Missouri Supreme Court did not unreasonably apply *Strickland* in reaching the same conclusion.

Next, petitioner argued the Missouri Supreme Court unreasonably determined the facts, *see* 28 U.S.C. § 2254(d)(2), when it concluded "[a]ny deficiencies in the [State's] argument were corrected by the trial court's instructions to the jury." *Johnson*, 406 S.W.3d at 905 (second alteration in original) (*quoting State v. Clemons*, 946 S.W.2d 206, 230 (Mo. banc 1997)). The jury was instructed that petitioner could be found guilty of first-degree murder only if he deliberated. The jury was also instructed that deliberation is defined as cool reflection for any length of time. According to plaintiff, "[a]n instruction defining 'deliberation' as 'cool reflection' cannot cure the [prosecutor's alleged error of equating cool reflection and conscious decision], because it does not contradict the prosecutor's argument that a 'conscious decision' means 'cool reflection.'" (# 142 at 4.)

As best this Court can tell, this is really a legal argument framed as a factual one. The Missouri Supreme Court made a legal conclusion—that petitioner was not prejudiced under *Strickland*—in light of the proper instruction. For the reasons explained above, the Missouri Supreme Court did not unreasonably apply *Strickland*. If this was indeed a factual determination, this Court finds that it was not unreasonable.

**Claim 22.** In this claim, petitioner argues "Missouri's statutory scheme does not adequately define first-degree murder or meaningfully narrow the class of defendants

who are eligible for the death penalty." Petitioner argues in his motion to alter or amend that, "[i]f deliberation requires nothing beyond a 'conscious decision,' then there is no principled way to determine whether any particular 'knowing' and intentional killing is a first degree murder instead of a second degree murder." (142 at 8.)

Again, the jury was properly instructed on the definition of deliberation—that instruction did not say deliberation means conscious decision. As for the Missouri statutory scheme, again, the Court "agrees with every state court to consider the issue and finds that Missouri's death penalty statute does narrow the class of death-eligible defendants and is not arbitrarily enforced." *Johnson*, 2018 WL 1083577, at *24.

**Claim 3.** In this claim, petitioner argues that the prosecution suppressed material exculpatory evidence "by failing to disclose that [it] shepherded trial witness Jermaine Johnson through his probation proceedings . . . during petitioner's trial." This is a *Brady* claim, which has three elements: (1) the existence of exculpatory evidence, (2) the failure of the state to disclose the evidence, and (3) prejudice from the failure to disclose. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

On post-conviction appeal, the Missouri Supreme Court rejected the *Brady* claim, finding that Jermaine's motivation for testifying (his hoping to receive favorable treatment related to his own criminal charges) was presented to the jury. *Johnson*, 406 S.W.3d at 902. On habeas review, this Court held "the Missouri Supreme Court's decision is not contrary to clearly established Supreme Court precedent, nor is the decision an unreasonable application of *Brady*, nor is it an unreasonable determination of the facts in light of the evidence presented to the state court." *Johnson*, 2018 WL

1083577, at *13. Specifically, this Court concluded the *Brady* claim must fail for two reasons. First, petitioner could not satisfy the second *Brady* element because Jermaine's self-interested motivation for testifying was presented to the jury by both sides. *Id.* Petitioner does not challenge this conclusion in his motion to alter or amend. Second, petitioner could not satisfy the third *Brady* element because Jermaine's testimony was cumulative and not prejudicial. *Id.* Petitioner does challenge the second conclusion.

Petitioner claims this Court wrongly deferred to the state court findings that characterized Jermaine's testimony as "cumulative." Petitioner argues "[t]he supposed 'corroboration' of the other witnesses was undermined by credibility concerns due to age and inconsistent testimony, as well as a more limited opportunity to observe." (#142 at 9.) The post-conviction motion court's conclusion that "Jermaine Johnson's testimony was corroborated by several other witnesses" (#65-5) was a finding of fact, and the Missouri Supreme Court affirmed that finding of fact on post-conviction appeal. *Johnson*, 406 S.W.3d at 901–02. Petitioner argues this was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2).

"'[A]n unreasonable determination of the facts in light of the evidence presented in state court proceedings' occurs 'only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'" *White v. Dingle*, 757 F.3d 750, 755–56 (8th Cir. 2014) (alteration in original) (*quoting Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)). Petitioner has not made this showing. Simply pointing to the witnesses' inconsistent testimony and ages— without giving this Court any reason to believe the state court failed to consider those

things as well—does not amount to clear and convincing evidence that the state court's factual findings lack support in the record.

Moving beyond the trial itself, in his Traverse and Amendment to Petition for Writ of Habeas Corpus (#88), petitioner for the first time filed a new affidavit from Jermaine recanting some of his testimony at trial and during the post-conviction motion proceedings. In light of the new affidavit, petitioner argued that "[t]he prosecution not only suppressed exculpatory evidence, but knowingly elicited perjured testimony." In connection with these new revelations, petitioner also requested additional discovery (#91) to further inquire into the prosecutor's misconduct and an evidentiary hearing (#94) to prove the new allegation.

On habeas review, this Court concluded that "[e]ven if Jermaine's allegations are true, petitioner's *Brady* claim would still fail because he was not prejudiced by Jermaine's cumulative testimony[.]" *Johnson*, 2018 WL 1083577, at *14. Thus, the Court denied petitioner's requests for discovery and for an evidentiary hearing. *Id.* Petitioner challenges the Court's holding on two grounds.

First, petitioner argues that "the Court misapprehends the import of the new evidence." (#142 at 12.) He claims "the testimony relied upon to sustain the verdict was the product of threats and coaching by the police[.]" (#142 at 12.) It is true that Jermaine alleged the police "told [him] that they were going to charge [him] as an accomplice to the crime if [he] didn't cooperate. They went pretty hard on [him]." (#88-1 at 153, attached as Exhibit 1.) Despite those allegations, Jermaine's new account of the murder—that he did not actually see petitioner shoot Sgt. McEntee—is hardly

inconsistent with his trial testimony. *Johnson*, 2018 WL 1083577, at *14. Nor does it change the cumulative nature of his testimony.

Second, petitioner argues the Court applied the wrong standard after it assumed Jermaine's allegations—namely, that the prosecutor knowingly presented false evidence—were true. Petitioner believes the Court applied the *Brady* standard, in which "evidence favorable to the accused is material only 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996) (*quoting Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). But "[w]here the prosecution knowingly uses perjured testimony, a standard of materiality more favorable to the accused applies. In such a situation, the conviction must be set aside if 'there is any reasonable likelihood' that the false testimony affected the verdict." *Id.* at 1368 n.2 (*quoting Kyles*, 514 U.S. at 433 n.7).

Assuming the prosecution knowingly used perjured testimony, this Court found that petitioner still was not prejudiced by Jermaine's cumulative testimony. *Johnson*, 2018 WL 1083577, at *14. But this Court did not explicitly note which materiality standard it applied. Thus, the Court's memorandum and order denying habeas relief will be amended to include this discussion applying the proper standard. The Court holds there is no reasonable likelihood that the allegedly false testimony—that Jermaine did not make a deal with the State—affected the verdict. As explained above, Jermaine's self-interested motivation for testifying was presented to the jury, and his testimony was cumulative.

**Claim 5.**  In this claim, petitioner argues that trial counsel provided ineffective assistance of counsel by failing to object to "the presence of uniformed police officers throughout the courtroom gallery[.]"  Petitioner raised this claim in his post-conviction motion, and the motion court held that petitioner "failed to demonstrate any prejudice," explaining that the jury was "sequestered throughout the proceedings and had no contact with any spectators at any point during the trial."  (#65-5 at 24.)

On post-conviction appeal, the Missouri Supreme Court held that petitioner "failed to demonstrate facts which would warrant relief."  *Johnson*, 406 S.W.3d at 903.  It also noted that petitioner failed "to present any fact that would support the ultimate conclusion that the presence of officers in the courthouse could have influenced the outcome of [petitioner's] trial."  *Id.*  "The parties disputed the implications of [this] ruling."  (#142 at 13.)

On habeas review, the state argued that this claim was defaulted, relying on the Eighth Circuit's statement that "[a] claim of ineffective assistance of trial counsel in a federal habeas petition is procedurally barred where the state court found that defendant failed to plead sufficient facts in the state petition."  *Smith v. Groose*, 998 F.2d 1439, 1441 (8th Cir. 1993).  In contrast, petitioner argued "that the procedural ruling was not 'adequate' to bar federal review because the fact-pleading rule was 'at least arguably confusing' in the case at hand and it was not obvious that [p]etitioner needed to specify how many uniformed officers were present in the courtroom."  (#142 at 15) (*quoting* #35 at 130–31).  Alternatively, petitioner argued that any default should be excused under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

This Court distinguished *Groose* and held that Claim 5 was not procedurally defaulted because the Missouri Supreme Court "evaluated the *Strickland* prejudice prong on the merits." *Johnson*, 2018 WL 1083577, at *14. This Court went on to find that the Missouri Supreme Court's decision was not an unreasonable application of or contrary to clearly established Supreme Court precedent. *Id.*

In his motion to alter or amend, petitioner makes three points. First, he claims the Court erred by failing to address his argument that Missouri's fact-pleading rule was an "adequate" state-law ground. Thus, petitioner claims, Missouri's fact-pleading rule cannot support procedural default. The Court did not address this argument because it found that the claim was not defaulted, so there was no need to decide whether the state procedural law was "adequate." Petitioner does not bother to explain how or why that was a manifest error of law or fact.

Second, petitioner claims the Missouri Supreme Court relied on a procedural rule and did not rule on the merits. He also claims any merits-based observations by the state court failed to address his complaint that the officers were intimidating simply by sitting in the courtroom. For all the reasons explained on habeas review, the Court again finds that the Missouri Supreme Court did address the merits of this claim.

But even if the Missouri Supreme Court did rely on Missouri's procedural law, the claim is defaulted, and it is not excused. Contrary to petitioner's argument, "Missouri's procedural rule is firmly established and regularly applied and constitutes an independent and adequate ground that bars [federal habeas] review[.]" *Barnett v. Roper*, 541 F.3d 804, 810 (8th Cir. 2008). And if the Missouri Supreme Court did rely on Missouri's

procedural law, there was nothing confusing about the rule at the time. Although petitioner claims the Missouri Supreme Court rejected his claim only because he failed to specify the number of uniformed officers, it did not. The Missouri Supreme Court simply listed that as one of several examples of why petitioner "failed to demonstrate facts which would warrant relief." *Johnson*, 406 S.W.3d at 903. Finally, any procedural default is not excused by initial post-conviction counsel's performance. This is because the underlying ineffective assistance of trial counsel claim is not a substantial one, which *Martinez* requires. *See Martinez*, 132 S. Ct. at 1318. The Court's memorandum and order denying the habeas petition will be amended to include this analysis.

Third, petitioner claims, "[e]ven if construed as a merits ruling, the [Missouri Supreme] [C]ourt's opinion was unreasonably dismissive of courtroom influences other than direct *ex parte* contacts between police officers and jurors." (#142 at 20.) Petitioner says the decision is an unreasonable application of *Holbrook v. Flynn*, 475 U.S. 560 (1986), and *Estelle v. Williams*, 425 U.S. 501 (1976). Petitioner claims the Missouri Supreme Court focused only on direct contact with jurors and failed to answer the proper question: "[i]f 'a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process[.]'" *Holbrook*, 475 U.S. at 570 (*quoting Estes v. Texas*, 381 U.S. 532, 542–43 (1965)). But petitioner overlooks one very important detail: these officers were just *spectators*. And petitioner does not argue that their presence was "a procedure employed by the State." Nor can he. Finally, "[g]iven the lack of holdings from [the Supreme] Court regarding the potentially prejudicial effect of spectators' courtroom conduct," *Carey v. Musladin*, 549 U.S. 70, 77

(2006), it cannot be said that the Missouri Supreme Court unreasonably applied clearly established federal law.

**Claim 9.** In this claim, petitioner argues that trial counsel provided ineffective assistance of counsel by "failing to object to a shackling device of which the jury was aware, which undermined the fairness of both phases of trial[.]" Petitioner believes the jury was aware of the shackling device because it made a loud noise when he sat down and forced him to walk with a limp.

The post-conviction motion court denied the claim, finding that it was a "mere allegation[]" and petitioner had "not demonstrated prejudice." (#65-5 at 25.) On post-conviction appeal, petitioner relied on *Deck v. Missouri*, 544 U.S. 622 (2005), to support his position that he need not meet the standard for *Strickland* prejudice. *Johnson*, 406 S.W.3d at 905. The Missouri Supreme Court affirmed the post-conviction motion court, finding that petitioner's "leg restraints were not visible, and there was no fact presented demonstrating the jury ever knew [petitioner] was restrained. [Petitioner] does not allege prejudice; rather, [petitioner] erroneously relies upon the belief there was structural prejudice such as in *Deck*." *Id.*

On habeas review, petitioner argued the Missouri Supreme Court's decision is contrary to and an unreasonable application of *Deck* because the Court in *Deck* relied on the jury's knowledge of the restraint, not the actual visibility of it. This Court disagreed, noting that "the key to the *Deck* claim was the presence of visible shackles." *Johnson*, 2018 WL 1083577, at *16. Ultimately, this Court found that petitioner was asking for an extension of *Deck*, which is not permitted on habeas review. *Id.*

In his motion to alter or amend, petitioner rehashes the same argument, claiming "*Deck* depended on the fact that the jurors knew of the restraints and not which of the five senses gave rise to that knowledge." (#142 at 22–23.) In *Deck*, the Supreme Court held "that the Constitution forbids the use of *visible* shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624 (first emphasis added) (*quoting Holbrook*, 475 U.S. at 568–569). The Missouri Supreme Court's decision is not contrary to *Deck* because the facts in this case are distinguishable—the restraint was not visible. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Nor was the decision an unreasonable application of *Deck* because, at the very least, "fairminded jurists" could agree that *Deck*'s holding depended on the restraints being visible. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). Thus, this Court committed no manifest error of law.

**Claim 16.** In this claim, petitioner argues his death sentence is unconstitutional because the "instructions did not require the jury to find unanimously and beyond a reasonable doubt that the mitigating circumstances do not outweigh the aggravating circumstances[.]" Petitioner believes this is "a finding of fact prerequisite to death-eligibility under the Missouri capital sentencing scheme."

On direct appeal, the Missouri Supreme Court held that "[t]he reasonable doubt standard does not apply to mitigating evidence[.]" *Johnson*, 284 S.W.3d at 585. The court elaborated: "[Petitioner's] reliance on *Ring*, *Apprendi*, and *Whitfield* is misplaced. This Court has stated that under *Ring* and *Apprendi* only evidence functionally equivalent

to an element, including statutory aggravating circumstances, must be found beyond a reasonable doubt." *Id.*

On habeas review, the Court explained that the Missouri Supreme Court has held that the weighing of mitigating and aggravating evidence is not subject to the beyond-a-reasonable-doubt standard. *Johnson*, 2018 WL 1083577, at *20 (*citing State v. Glass*, 136 S.W.3d 496, 521 (Mo. banc 2004)). This Court explained, "[i]mplicit in [the *Glass*] holding is that the evidentiary weighing is not a fact necessary *to increase the range of punishment*." *Id.* Finally, this Court noted that if "the Missouri Supreme Court meant to suggest in *Whitfield* that weighing mitigating and aggravating evidence is a fact necessary to increase the range of punishment, it tacitly overruled that suggestion in *Glass*." *Id.*

In his motion to alter or amend, petitioner argues that the Missouri Supreme Court has not overruled *Whitfield* in any respect. He concedes the Missouri Supreme Court explicitly held that this weighing step is not subject to the beyond-a-reasonable-doubt standard, but petitioner claims that holding "means only that the court has failed to recognize the constitutional implications of its binding statutory construction." (#142 at 26.)

Again, on direct appeal, the Missouri Supreme Court held that this weighing "fact" at step three is not functionally equivalent to an element. *Johnson*, 284 S.W.3d at 585 ("[Petitioner's] reliance on *Ring*, *Apprendi*, and *Whitfield* is misplaced. This Court has stated that under *Ring* and *Apprendi* only evidence functionally equivalent to an element, including statutory aggravating circumstances, must be found beyond a reasonable doubt."). As such, the weighing step is not subject to the beyond-a-reasonable-doubt

standard. *Id. Ring* instructs that the label (here, "functionally equivalent to an element") is irrelevant. 536 U.S. at 602. The dispositive question is whether Missouri law "makes an increase in a defendant's authorized punishment contingent on the finding of a fact[.]" *Id.* By finding that the weighing fact is not subject to the reasonable doubt standard, the Missouri Supreme Court answered the dispositive question in the negative. As a federal habeas court, this Court cannot reexamine this state-court interpretation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The memorandum and order denying the habeas petition will be amended to include this analysis.

**Claim 17.** In this claim, petitioner argues his "death sentence violates the Eighth Amendment on account of his youth and mental illness at the time of the offense." Petitioner did not raise this claim on direct appeal. Nonetheless, this Court granted a stay of the proceedings to allow petitioner to raise this and other issues before the Missouri Supreme Court in a Motion to Recall the Mandate. The Missouri Supreme Court summarily overruled the motion without opinion. On habeas review, this Court held that the Motion to Recall the Mandate did not cure the procedural default. *Johnson*, 2018 WL 1083577, at *6.

In his motion to alter or amend, petitioner claims the Court "failed to recognize that Petitioner brought his claim in a Missouri habeas corpus petition as well as in a motion to recall the mandate, and that Missouri law allowed Petitioner to raise his particular claim for the first time on habeas review." (#142 at 31.) Petitioner is correct that he also filed a petition for writ of habeas corpus with the Missouri Supreme Court. The Missouri Supreme Court summarily denied the petition. (#113-1.)

Petitioner argues, under Missouri law, a habeas petitioner may bring a claim that was otherwise procedurally defaulted if the petitioner can show "cause" and "prejudice." Petitioner claims he has shown "cause"—because the Supreme Court cases he relies on were decided after his direct appeal—and "prejudice"—because he was sentenced to death, even though this intervening authority forbids it.

The Court seriously doubts that "petitioner [can] rely on the novelty of his legal claim as 'cause' for noncompliance with [Missouri's] rules," *Smith v. Murray*, 477 U.S. 527, 536 (1986). To satisfy the "cause" prong of procedural default, a claim must be so novel that its legal basis was not reasonably available to counsel at the time of default. *See Reed v. Ross*, 468 U.S. 1, 18 (1984), *see also State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 215–16 (Mo. banc 2001) (applying federal habeas standards for "cause" and "prejudice"). "[T]he question is not whether subsequent legal developments have made counsel's task easier[.]" *Smith*, 477 U.S. at 537. As the state explains, the Supreme Court held—before petitioner's direct appeal—that people under the age of eighteen may not be sentenced to death, *Roper v. Simmons*, 543 U.S. 551, 568 (2005), and people with intellectual disabilities may not be sentenced to death, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002).

Assuming without deciding that petitioner's claim is not defaulted, his claim still fails under AEDPA review. The Missouri Supreme Court's decision summarily denying (#113-1) petitioner's habeas petition is still entitled to deference under § 2254(d), even though the court did not explain its denial. *See Harrington*, 131 S. Ct. at 784. This decision was neither contrary to nor an unreasonable application of the "intervening"

authority, *Hall v. Florida*, 134 S. Ct. 1986 (2014), or *Miller v. Alabama*, 567 U.S. 460 (2012), on which petitioner relies.

In *Hall*, the Supreme Court analyzed a Florida law that prohibited any criminal defendant with an IQ above seventy from presenting other evidence that would show his faculties are limited. 134 S. Ct. at 1994. The "strict IQ test cutoff" was at issue in the case, *id.*, and the Court found the statute unconstitutional, *id.* at 2001. The Missouri Supreme Court's decision was not contrary to *Hall* because Missouri law has no IQ test cutoff, and the jury heard evidence related to petitioner's mental capacity. Thus, the facts in this case are clearly distinguishable from *Hall*. Nor is the decision an unreasonable application of *Hall* because, again, Missouri law has no IQ test. Petitioner was allowed to present, and did present, evidence relating to his mental capacity.

Finally, in *Miller*, the Supreme Court "h[e]ld that mandatory life without parole for those under the age of 18 at the time of their crimes violates the" Constitution. 567 U.S. at 465. Again, the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of *Miller* because petitioner was nineteen at the time of the crime. The memorandum and order denying habeas relief will be amended to include this analysis.

**Claim 25.** In this claim, petitioner argues that trial counsel provided ineffective assistance of counsel by failing to move for recusal of the trial judge. Petitioner claims the trial judge "also served as the presiding judge of the Family Court that oversaw Petitioner's care and custody during his troubled childhood[.]" (#142 at 33.) Petitioner failed to bring this claim in state court.

On habeas review, petitioner conceded the claim was procedurally defaulted but argued the default is excused under *Martinez*. *Johnson*, 2018 WL 1083577, at *7. This Court found that it "need not decide whether counsel in petitioner's initial post-conviction proceeding were ineffective, because the underlying ineffective assistance of trial counsel claim is not a substantial one. The record shows no evidence of actual bias or prejudice on the part of the trial judge that would necessitate recusal." *Id.*

In his motion to alter or amend, petitioner argues that "a litigant need not show 'actual bias' in order for due process to require the judge's recusal." (#142 at 35.) Instead, the question is "whether, as an objective matter, 'the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (*quoting Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, (2009)). The Court reaffirms its holding that the underlying claim for ineffective assistance of trial counsel is not a substantial one. Alternatively, the Court finds the initial post-conviction counsel did not violate *Strickland* in failing to raise the claim in the post-conviction motion.

**Proposed Amended Claims 27, 28, and 29.** Twenty-five months after filing his petition for habeas relief, petitioner filed a motion for leave to amend. (#101.) Specifically, petitioner wanted to add three new claims. This Court denied the motion without prejudice (#110), and after petitioner renewed his motion, this Court denied it with prejudice (#136).

The Court denied the motion for leave to amend based on two reasons. First, this Court found that the proposed claims were untimely because the one-year period of

limitation had expired, and the proposed claims did not relate back to the original petition. (#136 at 4.)

Second, the Court analyzed whether petitioner's proposed claims were timely under an exception to the general one-year rule. The Court noted that § 2244(d)'s limitation period may begin running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). To be timely under § 2244(d)(1)(D), the Court explained that the proposed claim's factual predicates must have been undiscoverable until October 29, 2016. The Court found that the factual predicates for all three claims were available to petitioner well before October 29, 2016, and thus found that the proposed claims were also untimely under § 2244(d)(1)(D).

In his motion to alter or amend, petitioner claims the state waived any timeliness argument under § 2244(d)(1)(D) because it did not specifically raise this argument when it opposed petitioner's motion to amend. But as the state points out, because the proposed claims were never pleaded, the state never responded to them in a responsive pleading. *See* Fed. R. Civ. P. 8(c) (noting that affirmative defenses, including the statute of limitations, are waived if the party fails to assert the defense "[i]n responding to a pleading"). Instead, the state raised the timeliness argument in opposing the motion for leave to amend. This makes sense because a district court may deny a motion to amend if the amendment would be futile, *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998), and, of course, an untimely amendment would be futile. Thus, petitioner's waiver

argument fails, and the Court committed no manifest error of law in denying the motion to amend.

## CONCLUSION

For the foregoing reasons, petitioner's motion to alter or amend judgment (#142) is denied. An amended memorandum and order consistent with the discussion above will be filed.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Kevin Johnson's motion to alter or amend judgment (#142) is **DENIED**.

**IT IS FURTHER ORDERED** that an amended memorandum and order consistent with the discussion above will be filed.

Dated this <u>15</u><sup>th</sup> day of June 2018.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE