**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN JOHNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )      Case No. 4:13-CV-2046-SNLJ |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

## AMENDED MEMORANDUM AND ORDER

In accordance with the Court's ruling on petitioner's motion to alter or amend judgment (#142), this amended memorandum and order will supersede the memorandum and order filed on February 28, 2018.

A St. Louis County jury found petitioner Kevin Johnson ("petitioner") guilty of one count of first-degree murder, and the trial court, following the jury's recommendation, sentenced petitioner to death. The Missouri Supreme Court affirmed the conviction and sentence on direct appeal, *State v. Johnson*, 284 S.W.3d 561 (Mo. banc 2009), and later affirmed the denial of petitioner's motion for post-conviction relief, *Johnson v. State*, 406 S.W.3d 892 (Mo. banc 2013). This case is now before the Court on petitioner's 313-page "Petition for Writ of Habeas Corpus" (#35). The state filed a response in opposition, and petitioner filed a "Traverse" (#88) in support of his petition. Also pending are petitioner's Motions for Discovery (#91) and Request for a Hearing (#94), which this Court will address in conjunction with the habeas petition. Disposition of the motions is governed by 28 U.S.C. § 2254, part of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). Having reviewed the voluminous filings from both parties, the petition and accompanying motions are denied.

A brief summary of the case, taken from the Missouri Supreme Court's opinion on direct appeal is as follows:

> [Petitioner] had an outstanding warrant for a probation violation resulting from a misdemeanor assault. Around 5:20 in the evening of July 5, 2005, Kirkwood police, with knowledge of the warrant, began to investigate a vehicle believed to be [petitioner's] at this residence in the Meacham Park neighborhood. The investigation was interrupted at 5:30 when [petitioner's] younger brother had a seizure in the house next door to [petitioner's] residence. The family sought help from the police, who provided assistance until an ambulance and additional police, including Sgt. McEntee, arrived. [Petitioner's] brother was taken to the hospital, where he passed away from a preexisting heart condition. [Petitioner] was next door during this time, and the police suspended their search for [petitioner] and never saw [petitioner].

> After the police left, [petitioner] retrieved his black, nine millimeter handgun from his vehicle. When talking with friends that evening, [petitioner] explained his brother's death as, "that's f_____ up, man. They wasn't trying to help him, that he was too busy looking for me." Around 7:30, two hours after [petitioner's] brother had the seizure, Sgt. McEntee responded to a report of fireworks in the neighborhood and [petitioner] was nearby. As Sgt. McEntee spoke with three juveniles, [petitioner] approached Sgt. McEntee's patrol car and squatted down to see into the passenger window. [Petitioner] said "you killed my brother" before firing his black handgun approximately five times. Sgt. McEntee was shot in the head and upper torso, and one of the juveniles was hit in the leg. [Petitioner] reached into the patrol car and took Sgt. McEntee's silver .40 caliber handgun.

> [Petitioner] proceeded to walk down the street with the black and silver handguns. He then saw his mother and her boyfriend. [Petitioner] told his mother, "that m_____ f_____ let my brother die, he needs to see what it feel[s] like to die." His mother replied, "that's not true." [Petitioner] left his mother and continued to walk away.

> Meanwhile, Sgt. McEntee's patrol car rolled down the street, hit a parked car, and then hit a tree before coming to rest. Sgt. McEntee, alive but bleeding and unable to talk, got out of the patrol car and sat on his knees. [Petitioner] reappeared, shot Sgt. McEntee approximately two times in the head, and

Sgt. McEntee collapsed onto the ground. [Petitioner] also went through Sgt. McEntee's pockets.

Sgt. McEntee was shot a total of seven times in the head and upper torso. Six of the wounds were serious but did not render Sgt. McEntee unconscious or immediately incapacitated. One wound was a lethal injury that caused Sgt. McEntee's death. All seven wounds were from a nine millimeter handgun.

[Petitioner] left the scene cursing and drove to his father's house. [Petitioner] spent three days at a family member's apartment before arrangements were made for [petitioner] to surrender to a family member who was a police officer.

*Johnson*, 284 S.W.3d at 567–68.

## GUILT PHASE CLAIMS

**Claim 1: Petitioner was denied due process and equal protection of the law under *Batson v. Kentucky*, 476 U.S. 79 (1986), when the prosecutor struck African American veniremember Debra Cottman because of her race.**

**Claim 2: Prosecutorial misconduct violated petitioner's right to due process and deprived him of a fundamentally fair trial on the question of whether he committed first-degree murder.**

**Claim 3: The prosecution violated due process by failing to disclose that the prosecutor shepherded trial witness Jermaine Johnson through his probation proceedings, which were repeatedly continued at the state's behest during petitioner's trial.**

**Claim 4: Petitioner's Fifth and Fourteenth Amendment rights were violated by the prosecution's use of his taped interrogation despite petitioner's clear and unambiguous invocation of his right to remain silent.**

**Claim 5: Trial counsel deficiently failed to object to the presence of uniformed police officers throughout the courtroom gallery, which deprived petitioner of a fundamentally fair trial as guaranteed by the Sixth, Eighth, and Fourteenth Amendments.**

**Claim 6: Trial counsel rendered ineffective assistance of counsel, in violation of petitioner's rights under the Sixth and Fourteenth Amendments, by failing to object to the admission of State's Exhibit 88, a reenactment video, which was used by the state as substantive evidence of deliberation at the guilt phase of trial.**

**Claim 7:** Trial counsel rendered ineffective assistance, in violation of petitioner's rights under the Sixth and Fourteenth Amendments, by failing to impeach the testimony of Norman Madison, a key witness for the prosecution, with his prior inconsistent statement to police about what petitioner said after the shooting, which related directly to the central issue of whether petitioner acted with deliberation.

**Claim 8:** Counsel saddled petitioner's trial with structural error, and deprived him of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments, by failing to apprise the court of all relevant circumstances underlying the prosecution's race-based peremptory strike of African-American venireperson Debra Cottman.

**Claim 9:** Counsel were ineffective for failing to object to a shackling device of which the jury was aware, which undermined the fairness of both phases of trial and violated petitioner's rights under the Sixth, Eighth, and Fourteenth Amendments.

**Claim 10:** Trial counsel performed ineffectively under the Sixth Amendment by failing to review, and use at trial, crime scene photographs that would have cast doubt on the state's theory that petitioner deliberated before the second and fatal shooting of Sgt. McEntee.

## PENALTY PHASE CLAIMS

**Claim 11:** Trial counsel were constitutionally ineffective in failing to thoroughly investigate and discover additional DFS and other records documenting petitioner's family and social history and in failing to offer at the penalty phase specific mitigating evidence revealed by those records of the extreme nature of childhood abuse, neglect, and privation that petitioner suffered.

**Claim 12:** Trial counsel rendered ineffective assistance of counsel by failing to investigate and present the testimony of Lavonda Bailey in mitigation at the penalty phase of petitioner's trial, in violation of his rights under the Sixth and Fourteenth Amendments.

**Claim 13:** The trial court violated petitioner's constitutional rights to confrontation, to due process, and to a reliable sentencing proceeding by admitting hearsay evidence describing the crime's impact on the victim's son.

**Claim 14:** Petitioner's rights to a fair and impartial jury, to be free from cruel and unusual punishments, and to due process of law, were violated by the for-cause exclusion of Venireperson Tompkins, whose willingness to impose the death penalty for "terrible crimes" made her exclusion from trial unconstitutional.

**Claim 15:** The "depravity of mind" aggravating circumstance, as applied at petitioner's trial, was impermissibly vague and broad under the Eighth and Fourteenth Amendments.

**Claim 16:** Petitioner's death sentence is unconstitutional under the Sixth and Fourteenth Amendments because the instructions did not require the jury to find unanimously and beyond a reasonable doubt that the mitigating circumstances do not outweigh the aggravating circumstances, a finding of fact prerequisite to death-eligibility under the Missouri capital sentencing scheme.

**Claim 17:** Petitioner's death sentence violates the Eighth Amendment on account of his youth and mental illness at the time of the offense.

## CLAIMS IMPLICATING BOTH PHASES OF TRIAL

**Claim 18:** Trial counsel rendered ineffective assistance at both the guilt and penalty phases of petitioner's trial by failing to investigate, discover, and present mental health evidence of diminished capacity, in violation of his rights under the Sixth and Fourteenth Amendments.

**Claim 19:** Trial counsel were constitutionally ineffective at both the guilt and penalty phases for failing to investigate, develop, and present evidence demonstrating the deep and pervasive abandonment and neglect, as well as the horrific physical, emotional, and sexual abuse that petitioner suffered and witnessed throughout his childhood.

**Claim 20:** Trial counsel offered prejudicially ineffective assistance, and violated petitioner's rights under the Sixth and Fourteenth Amendments, by failing to investigate and present evidence of petitioner's experiences with violent police officers, including Sgt. McEntee.

**Claim 21:** Trial counsel rendered prejudicially ineffective assistance, and violated petitioner's rights under the Sixth and Fourteenth Amendments, by failing to investigate, develop, and present evidence that petitioner witnessed and suffered from pervasive community violence throughout his upbringing.

**Claim 22:** Petitioner's conviction and sentence violate the Eighth and Fourteenth Amendments because Missouri's statutory scheme does not adequately define first-degree murder or meaningfully narrow the class of defendants who are eligible for the death penalty.

**Claim 23:** Trial counsel rendered prejudicially ineffective assistance, and violated petitioner's rights under the Sixth and Fourteenth Amendments, by failing to object

to the prosecutor's repeated misconduct during closing arguments in both phases of the trial.

**Claim 24: Trial counsel performed ineffectively by failing to object to inadmissible evidence that prejudiced both phases of the defense, in violation of petitioner's rights under the Sixth and Fourteenth Amendments.**

**Claim 25: Trial counsel performed ineffectively, and violated petitioner's rights under the Sixth and Fourteenth Amendments, by failing to move for recusal of the trial judge, who had also served as Family Court judge during the proceedings that determined and monitored petitioner's custody in the years after he was removed from his mother—proceedings that were at issue in petitioner's trial.**

**Claim 26: Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated by the cumulative effect of the errors described in this petition, thereby invalidating his conviction and death sentence.**

## DEFAULTED CLAIMS

**A.     Standard of Review—Exhaustion and Procedural Default**

**Exhaustion.**  Before presenting a claim in a federal habeas petition, a petitioner must first properly exhaust state remedies.  28 U.S.C. § 2254(b)(1).  To exhaust state remedies, a petitioner must fairly present the "substance" of the claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  The petitioner's federal court claim must assert the same factual and legal bases as the state court claim. *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994).  To exhaust a claim, the petitioner must raise the claim on direct appeal or in state post-conviction proceedings, including on post-conviction appeal.  *See id.*

**Failure to exhaust can lead to procedural default.**  When a petitioner has not properly exhausted state remedies on a claim—and the time for doing so has passed—he has procedurally defaulted that claim.  *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010).

In this situation, the federal court should not review the claim unless the petitioner can show (1) "cause and prejudice" excusing that procedural default or (2) actual innocence. *Id.* at 760. Of course, a claim is also procedurally defaulted if the petitioner actually raised the claim in state court, and the state court disposed of the claim based on a state law procedural bar. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Again, the federal court should not review that claim unless the petitioner shows (1) cause and prejudice or (2) actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

**Missouri procedural law—direct appeal.** If a claim is preserved in the trial court, Missouri appellate courts determine whether an error occurred and, if so, whether the error was prejudicial. *State v. Johnson*, 207 S.W.3d 24, 34 (Mo. banc 2006). If a claim is not preserved in the trial court, Missouri appellate courts may still review the claim under the plain-error standard. *Id.* But these unpreserved claims are defaulted for federal habeas purposes. *Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015). Thus, even if the appellate court reviewed an unpreserved claim, it is still defaulted for federal habeas purposes. *Id.*

**Missouri procedural law—collateral post-conviction proceedings.** Under Missouri law, claims of trial court error that could be included on direct appeal are not cognizable in post-conviction review. *Zink v. State*, 278 S.W.3d 170, 191 (Mo. banc 2009) ("A movant cannot use a Rule 29.15 motion to raise claims that could have been, but were not, raised on direct appeal except in rare and exceptional circumstance."). Ineffective assistance of counsel claims must first be raised in a Rule 29.15 collateral proceeding. Mo. Sup. Ct. R. 29.15 (stating that "Rule 29.15 provides the exclusive

procedure by which such person may seek relief in the sentencing court" for ineffective assistance of counsel, among other violations).  Missouri circuit courts shall not entertain successive Rule 29.15 motions.  *Id.*  "[A]ny allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal," including ineffective assistance of counsel claims.  *Barnett v. Roper*, 941 F. Supp. 2d 1099, 1112 (E.D. Mo. 2013) (*quoting State v. Clay*, 975 S.W.2d 121, 141 (Mo. banc 1998)).

**The federal cause requirement and ineffective assistance of counsel.**  In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced an exception to the longstanding *Coleman* rule that ineffective assistance of post-conviction counsel cannot establish cause to overcome procedural default.  The Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.  To satisfy *Martinez*, petitioner must show that his counsel in the initial post-conviction proceeding was ineffective under the standards of *Strickland*.  *Id.* at 14.  Petitioner must also show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."  *Id.*

As for what amounts to a "substantial" claim, the Supreme Court in *Martinez* suggested (by citing *Miller–El v. Cockrell*, 537 U.S. 322 (2003)) that courts should apply the standards for certificates of appealability to issue.  *Id.*; *see also Barnett*, 941 F. Supp.

2d at 1113. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

This exception is narrow. By its own plain language, *Martinez* applies only to ineffective assistance of trial counsel claims that initial post-conviction counsel failed to raise. Any other claims of ineffective assistance of counsel—whether by direct appeal counsel, initial post-conviction counsel, or post-conviction appeal counsel—are not recognized by *Martinez*.

## B.     Analysis

Based on these standards, the state contends that a number of petitioner's claims are procedurally defaulted. This Court agrees as to Claims 2, 4, 10, part of 11, 17, 19, 20, part of 23, 24, and 25. At the outset, this Court observes that petitioner makes no claim of actual innocence as a "gateway" to habeas relief. Thus, he may bring a defaulted claim only if he shows cause and prejudice excusing the default. The Court also notes that petitioner makes no cause-and-prejudice arguments other than those discussed below.

## Claim 2

This is a claim that the prosecutor's closing argument was improper in the guilt phase, and trial counsel failed to object. Petitioner concedes that trial counsel did not properly preserve the issue, but he argues the claim was nonetheless preserved because

the Missouri Supreme Court reviewed the claim for "plain error." But, as noted, on federal habeas review, a petitioner may not cure a defaulted claim of trial court error by asserting the claim was addressed under plain error on appeal. *Clark*, 780 F.3d at 876. Petitioner's reasoning apparently is that the Missouri Supreme Court's willingness to review the claim for plain error obviates the need for an objection at trial. *Clark v. Bertsch* is to the contrary and directly on point.

In his motion to alter or amend, petitioner argued—for the first time—even if the claim is defaulted, he has shown "cause"—his trial counsel's allegedly ineffective assistance of counsel—to excuse the default. Although new legal theories are inappropriate when raised under a Rule 59(e) motion, the Court will briefly address the argument.

Even if trial counsel provided ineffective assistance (which this Court seriously doubts), this claim must still fail because petitioner cannot show prejudice: there's "no reasonable probability that, but for counsel's [failure to object], the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court will analyze the prejudice prong below, under Claim 23. Because petitioner's ineffective assistance of counsel claim fails, the procedural default is not cured.

Finally, assuming the claim was not procedurally defaulted, the Missouri Supreme Court held that the closing argument was not plain error under state law. *Johnson*, 284 S.W.3d at 574. "A federal court may not re-examine a state court's interpretation and application of state law." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994).

**Claim 4**

This claim—based on an alleged *Miranda* violation—stems from the trial court's admitting petitioner's taped interrogation. The claim is procedurally defaulted because there was no objection at trial. Under plain error review on direct appeal, the Missouri Supreme Court ruled that there was no *Miranda* violation and that the interrogation video was not improperly admitted. *Johnson*, 284 S.W.3d at 582. Again, *Clark v. Bertsch* precludes federal habeas review of this claim reviewed only under plain error, and this Court, having closely reviewed the record, concurs in the Missouri Supreme Court's ruling.

**Claim 10**

This claim is based on ineffective assistance of trial counsel in failing to use crime scene photos at trial to "cast doubt" on the state's theory of petitioner's deliberation. This claim is defaulted because it was not included in petitioner's appeal from the denial of his post-conviction motion. Petitioner does not deny this failure.

**Claims 11 and 19**

These are claims of ineffective assistance of trial counsel, both pertaining to the failure of counsel to investigate and introduce evidence of petitioner's background. In Claim 11, petitioner complains that trial counsel failed "to thoroughly investigate and discover additional DFS and other records documenting [petitioner's] family and social history and in failing to offer at the penalty phase specific mitigating evidence revealed by those records of the extreme nature of childhood abuse, neglect, and privation that [petitioner] suffered." Similarly, in Claim 19, petitioner argues that trial counsel failed in

both the guilt and penalty phases "to investigate, develop and present evidence demonstrating the deep and pervasive abandonment and neglect, as well as the horrific physical, emotional, and sexual abuse that [petitioner] suffered and witnessed throughout his childhood."

Petitioner did not raise these claims in his post-conviction motion, nor on post-conviction appeal, except that Claim 11 was raised solely in the context of trial counsel's failure to raise a defense of diminished capacity based on acute stress disorder in the guilt phase and for mitigation in the penalty phase. Although petitioner now argues that the Claim 11 evidence of family and social history should have been presented independently and in addition to evidence in support of acute distress disorder, and especially for mitigation in the penalty phase, it is defaulted except in that limited context. Petitioner concedes that Claim 19 was not raised at all and is wholly defaulted. This Court notes, however, that the diminished capacity/acute stress disorder issue, itself, was not defaulted and is presented in Claim 18. To the extent that Claim 11 is not defaulted, it is subsumed by Claim 18 and will be addressed in that connection.

The partially defaulted Claim 11 and the wholly defaulted Claim 19 are not excused under the narrow exception of *Martinez*. There is no substantial showing of the denial of the constitutional right of effective assistance of counsel. To be sure, petitioner points out a number of specific incidents of child abuse and neglect that were discovered by post-conviction counsel and post-conviction appeal counsel. But the record shows that trial counsel did in fact conduct a reasonable investigation into petitioner's childhood, including their receipt and review of more than 1600 pages of juvenile

records.  Furthermore, trial counsel made a strategic choice to relate petitioner's history of childhood abuse through his grandmother, aunt, and the social workers and doctors who cared for him.  The additional evidence petitioner now offers merely bolsters that which was already introduced in mitigation.  As such, petitioner cannot establish *Strickland* prejudice.

Petitioner also requests an evidentiary hearing (#94) on Claim 19.  As explained above, the claim is without merit, and the request for an evidentiary hearing is denied. *See Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994).

**Claim 17**

This claim is that petitioner's "death sentence violates the Eighth Amendment on account of his youth and mental illness at the time of this offense."  Petitioner concedes that this claim was not included on direct appeal.  Nonetheless, this Court granted a stay of the proceedings to allow petitioner to raise this and other issues before the Missouri Supreme Court by way of Motion to Recall the Mandate.  But the Supreme Court summarily overruled the motion without opinion.  Under these circumstances, the Motion to Recall the Mandate does not obviate the earlier procedural default.  *See State ex rel. Strong v. Griffith*, 462 S.W.3d 732, 738–39 (Mo. banc 2015).

Petitioner also filed a petition for writ of habeas corpus with the Missouri Supreme Court at the same time that he filed his Motion to Recall the Mandate.  The Missouri Supreme Court summarily denied the petition.  (#113-1.)  Petitioner argues, under Missouri law, a habeas petitioner may bring a claim that was otherwise procedurally defaulted if the petitioner can show "cause" and "prejudice."  Petitioner claims he has

shown "cause"—because the Supreme Court cases he relies on were decided after his direct appeal—and "prejudice"—because he was sentenced to death, even though this intervening authority forbids it. As such, according to petitioner, his claim was timely under Missouri law and is properly exhausted.

The Court seriously doubts that "petitioner [can] rely on the novelty of his legal claim as 'cause' for noncompliance with [Missouri's] rules," *Smith v. Murray*, 477 U.S. 527, 536 (1986). To satisfy the "cause" prong of procedural default, a claim must be so novel that its legal basis was not reasonably available to counsel at the time of default. *See Reed v. Ross*, 468 U.S. 1, 18 (1984), *see also State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 215–16 (Mo. banc 2001) (applying federal habeas standards for "cause" and "prejudice"). "[T]he question is not whether subsequent legal developments have made counsel's task easier[.]" *Smith*, 477 U.S. at 537. The Supreme Court held—before petitioner's direct appeal—that people under the age of eighteen may not be sentenced to death, *Roper v. Simmons*, 543 U.S. 551, 568 (2005), and that people with intellectual disabilities may not be sentenced to death, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002).

Assuming without deciding that petitioner's claim is not defaulted, his claim still fails under AEDPA review. The Missouri Supreme Court's decision summarily denying (#113-1) petitioner's habeas petition is still entitled to deference under § 2254(d), even though the court did not explain its denial. *See Harrington*, 131 S. Ct. at 784. This decision was neither contrary to nor an unreasonable application of the "intervening" authority, *Hall v. Florida*, 134 S. Ct. 1986 (2014), or *Miller v. Alabama*, 567 U.S. 460 (2012), on which petitioner relies.

In *Hall*, the Supreme Court analyzed a Florida law that prohibited any criminal defendant with an IQ above seventy from presenting other evidence that would show his faculties are limited. 134 S. Ct. at 1994. The "strict IQ test cutoff" was at issue in the case, *id.*, and the Court found the statute unconstitutional, *id.* at 2001. The Missouri Supreme Court's decision was not contrary to *Hall* because Missouri law has no IQ test cutoff, and the jury heard evidence related to petitioner's mental capacity. Thus, the facts in this case are clearly distinguishable from *Hall*. Nor is the decision an unreasonable application of *Hall* because, again, Missouri law has no IQ test. Petitioner was allowed to present, and did present, evidence relating to his mental capacity.

Finally, in *Miller*, the Supreme Court "h[e]ld that mandatory life without parole for those under the age of 18 at the time of their crimes violates the" Constitution. 567 U.S. at 465. Again, the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of *Miller* because petitioner was nineteen at the time of the crime.

**Claim 20**

This is a claim of ineffective assistance of trial counsel for failing to introduce evidence of petitioner's "experience with violent police officers" in mitigation, especially petitioner's earlier interaction with the victim, Sgt. McEntee. Petitioner concedes that this claim has not been raised in state court, but he claims any procedural default is excused under *Martinez*. The state argues that petitioner did raise this claim in his post-conviction motion but not in his post-conviction appeal; therefore, *Martinez* is not applicable. Petitioner counters that post-conviction counsel raised an ineffective

assistance claim based on limited information about the victim's character but failed to appraise the post-conviction motion court of the Kirkwood Police Department's behavior more generally.

This Court agrees with the motion court that trial counsel acted competently in raising the issue only briefly as opposed to attacking the victim and the police department as a central feature of the defense case. Assuming the claim is procedurally defaulted, *Martinez* does not excuse the default because the underlying ineffective assistance of trial counsel claim is not substantial.

Petitioner also requests an evidentiary hearing (#94) on this claim. As explained above, the claim is without merit, and the request for an evidentiary hearing is denied. *See Wilson*, 12 F.3d at 146.

**Claim 21**

This is a claim of ineffective assistance of trial counsel "by failing to investigate, develop, and present evidence that [petitioner] witnessed and suffered from pervasive community violence throughout his upbringing." Petitioner concedes that the claim was not raised by post-conviction counsel, nor by post-conviction appeal counsel, and thus is defaulted. Petitioner claims the default is excused under *Martinez*. Again, this Court need not decide whether petitioner's initial post-conviction counsel were ineffective, because the underlying ineffective assistance of trial counsel claim is not a substantial one. Trial counsel did, in fact, introduce substantial evidence of petitioner's childhood experiences of abuse and neglect. And, as the Eighth Circuit has held, it is not enough to demonstrate ineffective assistance of counsel simply because other counsel might have

focused on different or additional details. *Ringo v. Roper*, 472 F.3d 1001, 1007 (8th Cir. 2007).

Petitioner also requests an evidentiary hearing (#94) on this claim. As explained above, the claim is procedurally defaulted, and the request for an evidentiary hearing is denied. *See Wilson*, 12 F.3d at 146.

## Claim 23

This is a claim of ineffective assistance of trial counsel for failing to object to the prosecutor's alleged "misconduct during closing arguments in both phases of the trial." This is the same alleged misconduct addressed in Claim 2 that the Missouri Supreme Court reviewed for plain error. The state agrees that the failure to object to that portion of the prosecutor's argument pertaining to the deliberation element of the charge is not defaulted. The Court will address that part below. But the remaining parts of the claim were not raised in the post-conviction appeal and are thereby defaulted.

## Claim 24

This is a claim of ineffective assistance of trial counsel for failing to object to taped witness statements, including petitioner's statement. Petitioner did not raise this claim in his post-conviction motion appeal, and thus it is defaulted. In any event, the Missouri Supreme Court held that petitioner's statement was properly admitted. *Johnson*, 284 S.W.3d at 582. In addition, the post-conviction motion court determined that the objection to the statements of the other witness would have been meritless under state law. This Court, having reviewed the record, agrees with these determinations.

## Claim 25

This is a claim of ineffective assistance of trial counsel "by failing to move for recusal of the trial judge[.]"  Petitioner concedes this claim was not raised at any level in state court and is thereby defaulted, but he claims the default is excused under *Martinez*. This argument fails because the underlying ineffective assistance of trial counsel claim is not a substantial one.  Additionally, initial post-conviction counsel did not violate *Strickland* in failing to raise the claim in the post-conviction motion.  And in    fact, the record shows no evidence of actual bias or prejudice on the part of the trial judge that would necessitate recusal.

## NON-DEFAULTED CLAIMS

**A.       Standards of Review**

Federal habeas courts may not retry state issues that fail to rise to the level of a federal constitutional violation.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 67–68.

**1.       AEDPA Review Standards**

The AEDPA "restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits in State court.'"  *Johnson v. Williams*, 568 U.S. 289, 292 (2013) (*quoting* 28 U.S.C. § 2254(d)).  "[I]f a claim has been 'adjudicated on the merits in State court,' a federal habeas court may not grant relief unless 'the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"

*Id.* (*quoting* § 2254(d)). Subsection one governs claims based on questions of law, while subsection two governs claims based on questions of fact.

**Questions of law under 28 U.S.C. § 2254(d)(1).** This Court does not defer to a state court's merits adjudication that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). That is, federal habeas courts must "deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final." *Williams v. Taylor*, 529 U.S. 362, 380 (2000) (opinion of Stevens, J.) (footnote omitted); *see also* 28 U.S.C. § 2254(d)(1). Thus, when deciding whether the rule of law was clearly established, federal habeas courts "measure state-court decisions 'against [Supreme Court] precedents *as of the time the state court renders its decision.*'" *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)).

This Court does not defer to a state court's merits adjudication that was "contrary to" clearly established Supreme Court precedent. An adjudication is "'contrary to . . . clearly established [Supreme Court] precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (*quoting Williams*, 529 U.S. at 405–06).

This Court does not defer to a state court's merits adjudication that "unreasonably applied" clearly established Supreme Court precedent. An "unreasonable application" of clearly established Supreme Court precedent is most easily defined in the negative. A decision is not unreasonable simply because it is incorrect or erroneous. *Id.* at 75. Nor is a decision unreasonable if "fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). When deciding whether the state court unreasonably applied clearly established federal law, federal habeas courts "examine the ultimate legal conclusion reached by the court . . ., not merely the statement of reasons explaining the state court's decision. *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (internal citation omitted). "At least where there is no 'conspicuous misapplication of Supreme Court precedent' that makes the state court's decision 'contrary to' clearly established law, . . . the proper question is whether there is 'any reasonable argument' that the state court's judgment is consistent with [clearly established federal law]." *Id.* at 831–32 (internal citation omitted) (*first quoting Wright v. Sec'y for Dep't of Corrs.*, 278 F.3d 1245, 1256 n.3 (11th Cir. 2002); *and then quoting Richter*, 131 S. Ct. at 788).

When a federal habeas court reviews a claim under § 2254(d)(1), the federal court "is limited to the record that was before the state court that adjudicated the claim on the

merits." *Pinholster*, 563 U.S. at 181. Thus, the federal court cannot consider new evidence in that situation.

**Questions of fact under 28 U.S.C. § 2254(d)(2).** This Court does not defer to a state court's merits adjudication that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "'[B]asic, primary, or historical facts' in the state court record are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1)." *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (*quoting Lupien v. Clarke*, 403 F.3d 615, 620 (8th Cir. 2005)). The petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Nor does some contrary evidence in the record show that the state court determination of fact was unreasonable. *Id.* at 850. When the determination of facts depends on a credibility finding, this Court defers to the credibility determination of the state trial or motion court. *Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir. 2004).

Of course, a federal habeas court's review is limited to the "evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), unless the parties jointly submit new evidence without objection or reference to § 2254(d)(2). *Miller–El v. Dretke*, 545 U.S. 231, 256 n.15 (2005).

## 2. Evidentiary Hearing Standards

Evidentiary hearings generally are used as a means of developing the applicant's substantive habeas claims. In deciding whether an evidentiary hearing is appropriate or permissible, the federal habeas court must consider several issues, any one of which may preclude this Court from granting a hearing.

First, the federal habeas court decides whether the state court adjudicated the petitioner's claim on the merits. If it did, the federal court's review is limited to the record that was before the state court. *Pinholster*, 563 U.S. at 181; 28 U.S.C. § 2254(d)(2).

Second, the federal habeas court decides whether the petitioner "failed to develop the factual basis" of his claim in state court. 28 U.S.C. § 2254(e)(2). Federal courts may consider new evidence "only if [the petitioner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed by § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam). Pursuant to § 2254(e)(2), the court shall not hold an evidentiary hearing unless

    **(A)**    the claim relies on—

        **(i)**    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        **(ii)**    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    **(B)**    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Diligence for the purposes of § 2254(e)(2)(A)(ii) depends on whether the petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435.

Third, if the petitioner satisfies § 2254(e)(2), the federal habeas court decides whether a factual basis for the petitioner's claim already exists in the record. *See* Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. If the claim can be resolved on the existing record, an evidentiary hearing is unnecessary. *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007).

Fourth, the federal habeas court decides whether the petitioner's allegations amount to a colorable claim. That is, an evidentiary hearing is unnecessary where petitioner's allegations fail to state a claim for which habeas relief may be granted. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995).

### 3.    New Discovery Standards

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts. To establish good cause, a petitioner must make "specific allegations" that give a court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (alteration in original) (*quoting Bracy*, 520 U.S. at 908–09).

Of course, the petitioner must show that he was not at fault in failing to develop the evidence in state court or, if he was at fault, that § 2254(e)(2) is satisfied, as discussed above. *See Holland*, 542 U.S. at 653 (explaining that § 2254(e)(2) restrictions apply when a petitioner seeks to expand the evidentiary record without an evidentiary hearing). Where the state court adjudicated the petitioner's claim on the merits, a federal court cannot consider materials obtained during discovery in the federal proceeding in deciding whether the state court's merits decision was objectively unreasonable under § 2254(d)(1). *Pinholster*, 563 U.S. at 181.

### 4.     Ineffective Assistance of Counsel Standard

When an ineffective assistance of counsel claim has been adjudicated on the merits in state court proceedings, that claim is governed by both the AEDPA and *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a petitioner must prove both that (1) trial counsel was incompetent and (2) he suffered prejudice from such incompetence. *Strickland*, 466 U.S. at 687. On the competence prong, a petitioner must allege specific acts of incompetence. *Id.* at 690. Counsel is presumed competent, and decisions based on a reasonable trial strategy do not demonstrate incompetence. *Id.* at 689–91. Counsel is not incompetent merely because the strategy was unsuccessful. *Id.* at 689. Furthermore, competence is judged based on the information available at the time that counsel acted. *Id.* at 689–91. While counsel has a duty to investigate the case, that duty is to conduct a reasonable investigation. *Id.* at 690–91.

On the prejudice prong, a petitioner must show that, in light of all of the evidence in the case, there is a reasonable probability of a different result. *Id.* at 694. Prejudice is measured based on the outcome of the proceeding in which counsel was allegedly ineffective, not the potential impact on other proceedings. *Kennedy v. Kemna*, 666 F.3d 472, 485–86 (8th Cir. 2012). When the claim of incompetence involves a failure to object or file a motion to suppress, a petitioner must show both a reasonable probability that the objection or motion to suppress would have succeeded and that the result of the trial would have been different but for the allegedly improper evidence or argument. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (recognizing that for claims of ineffective assistance in litigating a motion to suppress, the petitioner had to prove that the Fourth Amendment claim was meritorious and that there was a reasonable probability of a different verdict if the challenged evidence were excluded).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams*, 695 F.3d at 831 (*quoting Pinholster*, 563 U.S. at 190). First, under *Strickland*, the state court must predict (under the prejudice prong) whether the result of the trial would have been different without the alleged deficiencies of trial counsel. *Id.* Second, under the AEDPA, the federal habeas court "must then give substantial deference to the state court's predictive judgment." *Id.* "So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.*

**B.    Analysis**

**Claims 1 and 8**

These voir dire claims center around the prosecutor's peremptory strike of African-American venire member Debra Cottman. In Claim 1, petitioner maintains that Cottman was struck because of her race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and in Claim 8, petitioner claims that his trial counsel committed ineffective assistance of counsel "by failing to apprise the court of all relevant circumstances underlying the prosecutor's race-based peremptory strike[.]"

Under *Batson*, a defendant must first make a prima facie showing that a peremptory challenge has been exercised on the basis of race. *Batson*, 476 U.S. at 93–94. That showing was made here simply because Cottman is African-American. *Id.* at 96–97.

Second, once the prima facie case is made, the burden shifts to the state to tender a race-neutral explanation for the challenged strike. *Id.* at 97. The prosecutor in this case said he struck Cottman because she was "not all that willing to answer the questions regarding the death penalty," and also because Cottman served as a foster parent for children at the Annie Malone Children's Home, which is one of several such homes where petitioner lived during his troubled childhood. She added that she still stayed in contact with some of the children she had fostered. Petitioner makes no claim that those reasons—considered alone—were based on race.

Third, after the state provides its race-neutral explanation, the trial court then makes the factual determination of whether the defendant has demonstrated that the reasons given are pretextual and that the strike is the product of purposeful

discrimination. *Hernandez v. New York*, 500 U.S. 352, 359 (1991); *Batson*, 476 U.S. at 98. At this stage, the trial court can consider the persuasiveness and plausibility of the reasons given by the party making the strike in determining the "*genuineness*" of the reasons. *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). This determination is based on the totality of the facts. *Hernandez*, 500 U.S. at 363. Because this determination includes issues of credibility, the reviewing court should give great deference to the findings of the trial court and should reverse only if clearly erroneous. *Id.* at 364–69; *Batson*, 476 U.S. at 98 n.21.

According to the Supreme Court of the United States, factors relevant to the determination of credibility (and thus whether the ruling was clearly erroneous) include the demeanor of the attorney who made the strikes, the reasonableness of the strikes, and whether the strikes were related to accepted trial strategy. *Miller–El*, 537 U.S. at 338–39. The Supreme Court also indicated that other matters such as selective questioning, failure to strike similarly situated venirepersons of a different race than the struck venireperson, disparate impact of the strikes taken as a whole, other steps taken to reduce the number of venirepersons of a given race on the jury, and the history of the party/attorney making the strikes of discriminating on the basis of race in jury selection were relevant factors. *Id.* at 342–47. Again, however, as the Supreme Court has explained, the trial court's determinations on a *Batson* challenge are based in significant part on an "evaluation of credibility" and are entitled to "great deference." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam).

In this case, petitioner grounds his challenge in § 2254(d)(1) and argues the Missouri Supreme Court unreasonably applied clearly established federal law (*Batson*), because it failed to consider "all relevant circumstances" when deciding whether the strike was pretextual. Petitioner claims the strike was pretextual in two respects. First, "[o]n the question of Cottman's purported 'unwillingness' to answer questions, her death-qualification testimony was indistinguishable from that of 36 other veniremembers who the prosecutor did not strike." That is, Cottman's responses were apparently no different than those of other non-struck prospective jurors who gave similar "yes" or "no" kinds of answers. Second, the prosecutor's assertion that he did not want anyone on the jury who was associated with Annie Malone Children's Home was belied by the fact that he did not strike four white jurors who had similar contacts with similar Division of Family Services placements.

In the briefing, the parties focus mostly on the latter point, and indeed, in denying the *Batson* challenge, the trial court, and later, the Missouri Supreme Court, relied entirely on their determinations that the Annie Malone response was not pretextual. *Johnson*, 284 S.W.3d at 570–71. The trial court ruled, and the Missouri Supreme Court affirmed, that the white jurors who were not struck were not similarly situated with Cottman. None had any connection with Annie Malone Children's Home and only had connections with the Division of Family Services in other contexts. The record fully supports these rulings, and given the deference afforded to state court credibility determinations, the rulings did not unreasonably apply *Batson*. Petitioner also complains that Cottman's disclosure about her contact with Annie Malone's came under questioning

by defense counsel, not the prosecutor, indicating that it was not a significant concern to the state. But petitioner offers no authority that the state is precluded from using juror responses to defense questioning as a basis for peremptory strikes.

Petitioner's additional complaint that the trial court failed to consider relevant evidence on the issue of pretext, and about the experiences of similarly situated jurors in particular, is refuted by the record. In fact, defense counsel brought to the court's attention the experience of the prospective juror who was most similarly situated to Cottman in that he had actually worked for a children's home and served as a weekend foster parent. But again, there was no connection to Annie Malone's—the children's home where petitioner actually resided. Nothing suggests the state court unreasonably applied *Batson* in this context.

Finally, petitioner contends that "the state court refused to consider the St. Louis County Prosecutor's Office troubling history of excluding black jurors," citing *Miller–El v. Dretke*, 545 U.S. 231 (2005). *Miller–El* involved multiple ways in which the prosecutor's office sought to keep African-Americans off juries, well beyond a comparison of "similarly situated" venirepersons. These other factors undermined the claimed race-neutral reasons for the government's peremptory strikes in that case and the totality of the circumstances showed intentional discrimination. Suffice it to say that *Miller-El*, with its egregious facts, is altogether distinguishable from the case at hand, and this Court finds that none of the factors that gave rise to the intentional discrimination finding in that case are present here. Thus, nothing suggests the state court unreasonably applied *Batson*.

Petitioner also asks for discovery on this claim (#91). Because this claim was adjudicated on the merits in state court, this Court's review under § 2254(d)(1) is limited to the record that was before the state court. *Pinholster*, 563 U.S. at 181. For the reasons explained above, the state court adjudication did not result in a decision that involved an unreasonable application of clearly established law. This Court would be unable to consider any new evidence that results from discovery, so petitioner's request is denied.

Claim 8—that trial counsel was ineffective by failing to apprise the court of all relevant circumstances establishing pretext in the prosecutor's strike of Cottman—also fails. Petitioner grounds this challenge in § 2254(d)(1) and argues the Missouri Supreme Court unreasonably applied clearly established federal law (*Batson*). On appeal from the post-conviction motion court, the Missouri Supreme Court held that even if trial counsel had been ineffective, "[petitioner] does not attempt to demonstrate how this has prejudiced him or how the result of the trial would have been different." *Johnson*, 406 S.W.3d at 907. To be sure, controlling Eighth Circuit precedent requires a showing of both cause *and* prejudice when claiming counsel was ineffective in presenting a *Batson* challenge. *See, e.g.*, *Young v. Bowersox*, 161 F.3d 1159, 160–61 (8th Cir. 1998). Therefore, the Missouri Supreme Court did not unreasonably apply *Batson*. Regardless, the claim that trial counsel was ineffective in presenting the *Batson* challenge fails on the merits. Petitioner's main point is that counsel failed to bring to the judge's attention the connection that three other prospective jurors had with DFS. But, as noted, counsel did argue that the prosecutor's strike was pretextual in light of the failure to strike a fourth

white juror who had a greater connection with DFS than the other three.  Obviously, calling the court's attention to the other three jurors would have been fruitless as well.

**Claim 3**

This claim is that the "prosecution suppressed material exculpatory evidence"—a *Brady* violation—by "shepherding" eye-witness Jermaine Johnson through his probation revocation proceedings, continuing his revocation hearing several times until after the trial.  This assistance, petitioner maintains, left the jury with "an incomplete and misleading understanding of Jermaine's motives" so that that the jury "lacked an informed basis to doubt crucial testimony that [petitioner] reached into Sgt. McEntee's car to shoot him and then retrieved the officer's gun."  Petitioner explains that Jermaine was facing probation revocation on a ten-year sentence for robbery and therefore had reasons to lie about Sgt. McEntee's murder to obtain favorable treatment in his own case.  The prosecutor's conduct, then, by repeatedly continuing the probation revocation hearing, was favorable treatment for Jermaine that was not disclosed to petitioner.  The result, petitioner claims, is a reasonable probability that the jury would have disfavored Jermaine's testimony and would not have found that petitioner deliberated, which was the key issue in the case.

Petitioner raised this claim in his post-conviction motion.  The motion court denied it, and the Missouri Supreme Court affirmed.  *Johnson*, 406 S.W.3d at 902.  Petitioner challenges the Missouri Supreme Court's decision on two grounds.  First, he argues it is both contrary to and an unreasonable application of clearly established Supreme Court precedent (*Brady*).  Second, he argues the decision reflects an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A *Brady* claim has three elements:  (1) the existence of exculpatory evidence, (2) the failure of the state to disclose the evidence, and (3) prejudice from the failure to disclose.  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Petitioner's *Brady* claim falls flat because Jermaine's self-interested motivation for testifying was presented to the jury by both sides and because Jermaine's testimony was cumulative and not prejudicial.

Jermaine testified for the state during the guilt phase of the trial.  He stated that he was with petitioner at the time of the shooting and saw petitioner reach inside the car window to shoot Sgt. McEntee.  In fact, petitioner, himself, testified that he shot Sgt. McEntee seven times while Sgt. McEntee was in his police car.  Additionally, this shooting was corroborated by at least two other witnesses.  Lamont Chester and Norvell Harris saw petitioner shoot Sgt. McEntee in the police car, and Harris even testified that petitioner *reached inside* the police car to shoot Sgt. McEntee.  Next, Jermaine testified that he saw petitioner reach in the police car, and a few moments later, he saw petitioner run by carrying two pistols.  Norvell Harris also saw petitioner reach in the police car after shooting Sgt. McEntee.  Further, Manu Jones testified that he saw petitioner struggle with Sgt. McEntee and saw petitioner take Sgt. McEntee's gun.  A few moments later, Manu Jones also saw petitioner carrying two guns—one in each hand.

Jermaine further testified that he decided to speak with the police about Sgt. McEntee's murder only after he violated his probation, hoping to receive some favorable treatment.  He testified that he was still on probation but that a deal with the state had not

been made in exchange for his testimony. He added that his probation had not been revoked for the incident.

On cross-examination, petitioner's counsel asked about the status of his probation and his interactions with petitioner before the shooting. Jermaine also acknowledged that he did not attend his probation revocation hearing and did not know how it was continued. In short, Jermaine's motivation for testifying was presented to the jury by both sides.

The post-conviction motion court ruled that the claim was refuted by the record, and the Missouri Supreme court affirmed on appeal. *Johnson*, 406 S.W.3d at 901–02. This Court agrees with the state court determination, first, that there was no *Brady* violation, and second, that given the cumulative nature of the testimony, petitioner suffered no prejudice in any event. Thus, the Missouri Supreme Court's decision is neither contrary to clearly established Supreme Court precedent nor an unreasonable application of *Brady*.

Finally, the state court's finding that Jermaine's testimony was corroborated by several other witnesses is not an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). "'[A]n unreasonable determination of the facts in light of the evidence presented in state court proceedings' occurs 'only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'" *White v. Dingle*, 757 F.3d 750, 755–56 (8th Cir. 2014) (alteration in original) (*quoting Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)). Petitioner has not made this showing. Simply pointing to the

witnesses' inconsistent testimony and ages—without giving this Court any reason to believe the state court failed to consider those things as well—does not amount to clear and convincing evidence that the state court's factual finding lacks support in the record.

All this notwithstanding, in his Traverse and Amendment to Petition for Writ of Habeas Corpus (#88), filed as a reply to the state's response in opposition to this petition, petitioner for the first time files a new affidavit from Jermaine recanting some of his testimony at trial and during the post-conviction motion proceedings.  In his affidavit, submitted some eleven years after the murder, eight years after the trial, and four years after the post-conviction motion, Jermaine—petitioner's cousin—now states that he did not actually see petitioner shoot Sgt. McEntee.  He adds that following his arrest, "[t]he district attorney told me that if I cooperated, made a statement, testified when they needed me to and said what they needed me to say that they would take care of my warrants and my probation."  In view of this new affidavit, petitioner now claims that "[t]he prosecution not only suppressed exculpatory evidence, but knowingly elicited perjured testimony."  In connection with these new revelations, petitioner also requests additional discovery (#91) to further inquire into the prosecutor's misconduct and an evidentiary hearing (#94) to prove the new allegation.

Even if Jermaine's allegations are true, petitioner's *Brady* claim would still fail because there is no reasonable likelihood, *United States v. Gonzales*, 90 F.3d 1363, 1368 n.2 (8th Cir. 1996), that the allegedly false testimony—that Jermaine did not make a deal with the state—affected the verdict, for all the reasons explained above.  Moreover, Jermaine's new account of the murder—that he did not actually see petitioner shoot Sgt.

McEntee—is hardly inconsistent with his trial testimony.  At trial, Jermaine testified that he (1) was with petitioner at the time of the shooting, (2) saw petitioner put the gun in Sgt. McEntee's car window, (3) saw petitioner reach in the car after the shooting, and (4) saw petitioner carrying two pistols soon after the shooting.  Jermaine recants none of this.  Thus, this Court does not have reason to believe that, if the facts are fully developed, petitioner may be able to show that he is entitled to relief, and his request for discovery (#91) is denied.  Finally, because petitioner's claim has no merit, his request for an evidentiary hearing (#94) is also denied.  *Wilson*, 12 F.3d at 146**.**

**Claim 5**

This is a claim of ineffective assistance of trial counsel because of counsel's failure to object to the presence of uniformed police officers in the courtroom throughout the trial.  On appeal from the post-conviction motion, the Missouri Supreme Court held that petitioner "failed to demonstrate facts which would warrant relief."  *Johnson*, 406 S.W.3d at 903.  It also noted that petitioner failed "to present any fact that would support the ultimate conclusion that the presence of officers in the courthouse could have influenced the outcome of [petitioner's] trial."  *Id.*  The parties dispute the implications of this ruling.

Relying on *Smith v. Groose*, 998 F.2d 1439 (8th Cir. 1993), the state argues this claim is defaulted.  In *Groose*, the Eighth Circuit wrote that "[a] claim of ineffective assistance of trial counsel in a federal habeas petition is procedurally barred where the state court found that defendant failed to plead sufficient facts in the state petition."  998 F.2d at 1441.  But *Groose* is distinguishable.  In *Groose*, the underlying ineffective

assistance of trial counsel claim was procedurally defaulted for a second reason: that petitioner omitted the claim from his post-conviction appeal. *Id.* Thus, in *Groose*, no Missouri appellate court clearly applied controlling Supreme Court precedent like the Missouri Supreme Court did in this case.

Here, the Missouri Supreme Court's analysis was more than petitioner failed to plead sufficient facts to warrant relief, and it instead evaluated the *Strickland* prejudice prong on the merits. In particular, the Missouri Supreme Court explained that the jury was sequestered throughout the trial and had no contact with any spectators. *Johnson*, 406 S.W.3d at 903. It pointed out that no officer caused any disturbance. *Id.* It also noted that "[d]uring the course of any trial, there could be a large number of uniformed police officers in the courthouse and walking in the hallways. Police officers are frequently called to testify in trials, which requires their presence in the courthouse." *Id.* Finally, it affirmed the motion court, which explicitly found that petitioner "failed to demonstrate prejudice." *Id.* Thus, this claim was adjudicated on the merits and is entitled to deference under the AEDPA. For the reasons explained above, this Court finds that the Missouri Supreme Court's decision is not an unreasonable application of or contrary to clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Even if the Missouri Supreme Court did rely on Missouri's procedural law, the claim is defaulted, and the default is not excused. Petitioner argues that the procedural ruling was not "adequate" to bar federal review because the fact-pleading rule was "at least arguably confusing" in this case, and it was not obvious that petitioner needed to specify how many uniformed officers were present in the courtroom. (#35 at 130–31.)

Contrary to petitioner's argument, "Missouri's procedural rule is firmly established and regularly applied and constitutes an independent and adequate ground that bars [federal habeas] review[.]" *Barnett v. Roper*, 541 F.3d 804, 810 (8th Cir. 2008). And if the Missouri Supreme Court did rely on Missouri's procedural law, there was nothing confusing about the rule at the time. Although petitioner claims the Missouri Supreme Court rejected his claim only because he failed to specify the number of uniformed officers, it did not. The Missouri Supreme Court simply listed that as one example of why petitioner "failed to demonstrate facts which would warrant relief." *Johnson*, 406 S.W.3d at 903.

Finally, petitioner argues that any procedural default is excused under *Martinez* because his initial post-conviction counsel provided ineffective assistance by failing to plead facts that showed relief. This argument fails because the underlying ineffective assistance of trial counsel claim is not a substantial one, which *Martinez* requires. *See Martinez*, 132 S. Ct. at 1318.

Petitioner also requests an evidentiary hearing (#94) on Claim 5. Because this claim was adjudicated on the merits in state court, this Court's review under § 2254(d)(1) is limited to the record that was before the state court. *Pinholster*, 563 U.S. at 181. As outlined above, the state court adjudication did not result in a decision that involved an unreasonable application of clearly established law. This Court would be unable to consider any new evidence that results from discovery, so petitioner's request is denied.

**Claim 6**

This is an ineffective assistance of trial counsel claim because counsel failed "to object to the admission of . . . a reenactment video, which was used by the state as substantive evidence of deliberation[.]" The thrust of petitioner's argument is that the video was an inaccurate representation of the murder scenario. In particular, petitioner contends the video did not represent his testimony and the persons who portrayed him and Sgt. McEntee were not the same height as he and Sgt. McEntee. The motion court denied this claim and the Missouri Supreme Court affirmed, holding that the video "was a fair representation of the evidence presented by the [s]tate" and "was supported by the evidence adduced at trial." *Johnson*, 406 S.W.3d at 902–03. For that reason, trial counsel was not ineffective for failing to preserve a non-meritorious objection. *Id.* Under § 2254(d)(1), this is not an adjudication that is contrary to or involves an unreasonable application of clearly established federal law.

**Claim 7**

This is a claim of ineffective assistance of trial counsel because counsel failed "to impeach the testimony of Norman Madison, a key witness for the prosecution, and his prior inconsistent statement to police about what [petitioner] said after the shooting, which related directly to the central issue of whether [petitioner] acted with deliberation." At trial, Madison testified that petitioner stated after the murder that "the m…f… let my brother die." According to the police report, though, petitioner said only that "[t]he m…f… killed my brother." This inconsistency, petitioner argues, was material, and counsel's failure to impeach Madison with this inconsistency was objectively

unreasonable.  Petitioner concludes, citing *Strickland*, that there is a reasonable probability the result of the trial would have been different.

Trial counsel did, however, impeach Madison on cross-examination with a prior inconsistent statement from Madison's deposition, a statement where Madison claimed that he only saw petitioner in a crowd and did not mention anything petitioner said.  The motion court found that the cross-examination on this point was sufficient to demonstrate the inconsistency in Madison's testimony and that petitioner suffered no prejudice from trial counsel's failure to pursue this issue further.  The Missouri Supreme Court agreed, holding that the minimal value of additional impeachment would not have resulted in a different verdict under the *Strickland* standard.  *Johnson*, 406 S.W.3d at 903–04.  Suffice it to say there is no unreasonable application of clearly established federal law.

**Claim 9**

This is an ineffective assistance of trial counsel claim because counsel failed "to object to a shackling device of which the jury was aware, which undermined the fairness of both phases of the trial[.]"  Petitioner concedes that the shackling devices were not visible to the jury, but he maintains that they "forced him to walk with a limp, and he had to pull a noisy latch on the brace in order to sit down."  He cites *Deck v. Missouri*, 544 U.S. 622 (2005), for the proposition that due process prohibits the routine use of shackling during trial.  But here, the post-conviction motion court denied the claim and the Missouri Supreme Court affirmed, holding that *Deck* prohibited only the use of shackles that are "actually visible" to the jury.  *Johnson*, 406 S.W.3d at 905.  The

Missouri Supreme Court also concluded that petitioner failed to allege sufficient facts showing *Strickland* prejudice. *Id.*

Although petitioner argues that the Missouri Supreme Court's opinion is contrary to or an unreasonable application of established federal law in *Deck*, the opposite is true: the key to the *Deck* claim was the presence of visible shackles. In effect, petitioner is asking for an extension of *Deck* but as noted, arguments for the extension or modification of current law do not support habeas relief.

**Claim 12**

This is a claim of ineffective assistance of trial counsel because counsel failed to investigate and present testimony from Lavonda Bailey, the maternal grandmother of petitioner's daughter, at the penalty phase of petitioner's trial. Petitioner claims that if trial counsel had contacted Bailey, she would have testified that petitioner had a good relationship with his daughter and that she wanted the relationship to continue. Petitioner raised this claim in his post-conviction motion, and the court found that petitioner was not prejudiced by trial counsel's failure to investigate Bailey's testimony because her testimony would have been cumulative. On post-conviction appeal, the Missouri Supreme Court affirmed, noting that Bailey's testimony would have been cumulative and that petitioner failed to demonstrate Bailey's testimony would have presented a "viable defense." *Johnson*, 406 S.W.3d at 909.

Petitioner claims the Missouri Supreme Court's decision is contrary to clearly established federal law (*Strickland*) because the Missouri Supreme Court (1) did not mention *Strickland* or other Supreme Court cases, (2) failed to take into account the

constitutional duty to investigate, and (3) incorrectly assessed *Strickland*'s prejudice prong because it noted that petitioner failed to demonstrate Bailey's testimony would have presented a "viable defense."

First, a state court decision is not contrary to clearly established Supreme Court precedent just because the state court fails to cite that precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The state court need not even be aware of the precedent, and the state court decision is not contrary to clearly established federal law unless the reasoning or result contradicts Supreme Court precedent. *Id.* The Missouri Supreme Court cited Missouri cases that cite federal precedent, and the Missouri Supreme Court found that Bailey's testimony would have been cumulative. Put another way, petitioner was not prejudiced—a *Strickland* element—by trial counsel's failure to investigate. The Missouri Supreme Court clearly applied federal precedent, and this argument fails.

Second, the Missouri Supreme Court did in fact consider trial counsel's constitutional duty to investigate. It noted that petitioner's counsel did not contact Bailey because petitioner led counsel to believe that he was not on good terms with Bailey and Bailey's testimony would not be helpful. *Johnson*, 406 S.W.3d at 909. As *Strickland* instructs, "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions[.]" *Strickland*, 466 U.S. at 691. Thus, the Missouri Supreme Court followed *Strickland*'s guidance, and this argument fails.

Third, the Missouri Supreme Court did not rely solely on petitioner's failure to show that Bailey's testimony would have provided a "viable defense." Instead, it first

noted that Bailey's testimony would have been cumulative, which clearly shows the court properly assessed prejudice. *Johnson*, 406 S.W.3d at 909. Thus, this argument fails, and the Missouri Supreme Court's decision is not contrary to clearly established federal law.

**Claim 13**

This is a claim that the trial court violated petitioner's constitutional rights by admitting hearsay evidence describing the crime's impact on the victim's son. At the penalty phase of the trial, Sgt. McEntee's widow read a letter from the couple's son. On direct appeal, the Missouri Supreme Court explained that the "letter was not used to support any of the three statutory aggravating circumstances and was only used to show the effect of the crime on the son." *Johnson*, 284 S.W.3d at 584. Thus, it held that the letter was not hearsay and "was properly used as a victim impact statement because it addressed the effect of the crime." *Id.*

Petitioner claims the Missouri Supreme Court unreasonably applied clearly established federal law "[b]ecause non-statutory aggravation informs death-eligibility and not just death-selection [under the Missouri death penalty statute.]" (#35 at 191.) Therefore, the Missouri Supreme Court unreasonably applied *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007), where the Fifth Circuit noted that the Confrontation Clause does not bar testimony relevant only to capital sentencing *decisions*, as opposed to capital sentencing *eligibility*. *Fields*, 483 F.3d at 325. Instead, the argument goes, the Missouri Supreme Court should have found that the letter was inadmissible testimonial hearsay under *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). This claim fails for at least two reasons.

First, petitioner has not shown that the Missouri Supreme Court unreasonably applied clearly established federal law in concluding the letter was not hearsay. The Missouri Supreme Court clearly found that the letter "was offered to show the effect of the crime on the victim's son and his feelings, not for the truth of any factual matter asserted therein." *Johnson*, 284 S.W.3d at 584. Petitioner cites no Supreme Court case that holds a victim impact statement—which is used to show the effect of crime—is hearsay. At a minimum, "fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents," *Richter*, 131 S. Ct. at 784, so the Missouri Supreme Court did not unreasonably apply clearly established federal law.

Second, petitioner claims the Confrontation Clause applies to this letter "[b]ecause the weight of aggravating and mitigating circumstances is itself a death-qualifying fact[.]" (#35 at 190.) Yet he cites only district court opinions—and no Supreme Court precedent—as support. Thus, the Missouri Supreme Court did not unreasonably apply *clearly established* federal law in finding that the Confrontation Clause did not apply to the letter. *See Johnson*, 284 S.W.3d at 584.

**Claim 14**

In this claim, petitioner argues his constitutional rights were violated when Venireperson Tompkins was struck for cause because she was willing to impose the death penalty only in "extraordinary" circumstances. During voir dire, Tompkins said she "really could not see any case where [the death penalty] would be appropriate" but explained that she did feel she was "somewhat impartial." (#35 at 193.) She went on: "I can be convinced otherwise, but I really do not see any case where the death penalty is

appropriate." (#35 at 193.) Later, she said the death penalty might be appropriate for "genocide or something like that." (#35 at 193.) Finally, she agreed that she was "not entirely closed off to the idea that [she] could hear something that would make [her] think that death would be an appropriate punishment[.]" (#35 at 193.) The trial court considered Tompkins's answers, body language, and credibility before sustaining the state's motion to strike Tompkins for cause.

On direct appeal, the Missouri Supreme Court elaborated on conflicting voir dire testimony: "While a juror's qualification is determined from the entire voir dire and not from a single response, the trial court may give more weight to a single response when presented with 'conflicting testimony regarding a prospective juror's ability to consider the death penalty.'" *Johnson*, 284 S.W.3d at 580 (*quoting State v. Tisius*, 92 S.W.3d 751, 763 (Mo. banc 2002)). It then noted that this case was similar to another case with conflicting testimony where a "juror unequivocally opposed the death penalty and later supported it only for terrible crimes" and affirmed. *Id.*

Petitioner claims the Missouri Supreme Court's decision contradicts and unreasonably applies *Witherspoon v. Illinois*, 391 U.S. 510 (1968). In *Witherspoon*, the Supreme Court held that a venireperson cannot be struck based on "general objections to the death penalty[.]" *Witherspoon*, 391 U.S. at 523. Petitioner argues the Missouri Supreme Court "ruled that a potential juror may be excluded if he or she supports the death penalty 'only for terrible crimes,'" (#35 at 196), which "flies in the face" of *Witherspoon* (#35 at 197). The Supreme Court later refined the language in *Witherspoon* and provided the following standard when deciding if a venireperson should be struck for

cause: "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). Petitioner's argument fails for at least two reasons.

First, the Missouri Supreme Court did not rule that a potential juror may be excluded if he or she supports the death penalty only for terrible crimes. Instead, it explained that a trial court may give more weight to a single response when a venireperson gives conflicting testimony about his or her ability to consider the death penalty. Here, Tompkins gave conflicting testimony. She first answered that she could not see any case where the death penalty would be appropriate. Later, she said she was not entirely closed off to the idea. Clearly, the trial court gave more weight to Tompkins's earlier answers, and the Missouri Supreme Court explained that this case *was similar to* another case where a venireperson unequivocally opposed the death penalty and later supported it for terrible crimes. *Johnson*, 284 S.W.3d at 580. This does not "fly in the face" of *Witherspoon* or *Witt*. Second, the Missouri Supreme Court properly gave deference to the trial court's judgment—which was based in part on Tompkins's demeanor in the context of conflicting testimony—as it was required to do. *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

**Claim 15**

In this claim, petitioner argues that the "depravity of mind" statutory aggravating circumstance was impermissibly vague and broad, in violation of the Eighth and Fourteenth Amendments. Over petitioner's objection, the trial court instructed the jury that it could find this homicide showed a depravity of mind only if the jury believed

beyond a reasonable doubt that petitioner "committed repeated and excessive acts of physical abuse upon Sgt. William McEntee and the killing was therefore unreasonably brutal." (#64-6 at 35.) Petitioner claims that definition is both vague and broad because neither Missouri case law nor the instruction defines "repeated" or "excessive."

On direct appeal, the Missouri Supreme Court held that the instruction sufficiently defined "depravity of mind" and that petitioner was not prejudiced. *Johnson*, 284 S.W.3d at 586–87. Petitioner claims that decision is contrary to or an unreasonable application of clearly established federal law because an aggravating circumstance must (1) carry a "core meaning" and be "capable of understanding," *Jones v. United States*, 527 U.S. 373, 400 (1999), and (2) "provide specific and detailed guidance." *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980). Undefined, petitioner argues, these terms lack a core meaning and provide no guidance. This Court disagrees.

The Supreme Court has held that a depravity of mind aggravating circumstance is constitutional if coupled with a limiting construction. *See, e.g.*, *Maynard v. Cartwright*, 486 U.S. 356, 364–65 (1988). In fact, the Supreme Court held that "'some kind of torture or serious physical abuse' is sufficient to channel and limit the jury's discretion in imposing the death sentence." *Mallett v. Bowersox*, 160 F.3d 456, 462 (8th Cir. 1998) (*quoting Maynard*, 486 U.S. at 364–65). Thus, the limiting construction—that petitioner "committed repeated and excessive acts of physical abuse"—provided sufficient guidance and limited the jury's discretion. Also, any error related to the depravity of mind aggravating circumstance was harmless because the jury found that two other aggravating circumstances were present. "[S]uch an error would be harmless if 'one of

the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances.'" *Clayton v. Roper*, 515 F.3d 784, 792 (8th Cir. 2008) (*quoting Brown v. Sanders*, 546 U.S. 212, 220 (2006)). The Missouri Supreme Court's decision is not contrary to or an unreasonable application of *Jones* or *Godfrey*.

**Claim 16**

In this claim, petitioner argues that his death sentence is unconstitutional "because the instructions did not require the jury to find unanimously and beyond a reasonable doubt that the mitigating circumstances do not outweigh the aggravating circumstances." When petitioner murdered Sgt. McEntee, Missouri's death penalty statute required a multistep process before a defendant could be sentenced to death:

> The trier shall assess and declare the punishment at life imprisonment without eligibility for probation, parole, or release except by act of the governor:
>
> (1) If the trier finds by a preponderance of the evidence that the defendant is mentally retarded; or
>
> (2) If the trier does not find beyond a reasonable doubt at least one of the statutory aggravating circumstances set out in subsection 2 of section 565.032; or
>
> (3) If the trier concludes that there is evidence in mitigation of punishment, including but not limited to evidence supporting the statutory mitigating circumstances listed in subsection 3 of section 565.032, which is sufficient to outweigh the evidence in aggravation of punishment found by the trier; or
>
> (4) If the trier decides under all of the circumstances not to assess and declare the punishment at death. If the trier is a jury it shall be so instructed.

RSMo. § 565.030.4 (West 2001) (amended 2014 and 2016). Petitioner submitted an instruction—and the trial court denied it—that would have instructed the jury that it was the state's burden to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances (#64-6 at 45). Instead, the trial court used the Missouri Approved Instructions–Criminal and instructed the jury as follows:

> If you have unanimously found beyond a reasonable doubt that one or more of the statutory aggravating circumstances submitted in Instruction No. 12 exists, you must then determine whether there are facts or circumstances in mitigation of punishment which are sufficient to outweigh facts and circumstances in aggravation of punishment. . . .

> It is not necessary that all jurors agree upon particular facts and circumstances in mitigation of punishment. If each juror determines there are facts or circumstances in mitigation of punishment sufficient to outweigh the facts or circumstances in aggravation of punishment, then you must return a verdict fixing [petitioner's] punishment at imprisonment for life . . . without eligibility for parole.

(#64-6 at 38–39.) The instruction did not state a specific burden of proof on either party for the weighing of mitigating and aggravating evidence.

Petitioner really makes three separate arguments rolled into one.

First, petitioner argues that it was the state's burden to prove the mitigating factors did not outweigh the aggravating factors. On direct appeal, the Missouri Supreme Court held that the trial court did not err in giving the instruction. *Johnson*, 284 S.W.3d at 588. It noted petitioner's "argument that the instruction improperly shifts the burden of proof has been rejected by the United States Supreme Court [in *Kansas v. Marsh*, 548 U.S. 163, 170–71 (2006)] and this Court [in *State v. Taylor*, 134 S.W.3d 21, 30 (Mo. banc 2004)]." *Id.* As a federal habeas court, this court cannot reexamine the Missouri Supreme Court's

interpretation of Missouri state law—that Missouri law does not saddle the state with this burden. *Groose*, 36 F.3d at 737. And it is clear from *Kansas v. Marsh*, 548 U.S. 163 (2006), that Missouri law is constitutional, even with this interpretation. Indeed, a state may explicitly shift to the defendant the burden of proving that mitigating evidence outweighs aggravating evidence, so long as doing so does not lessen the state's burden to prove every element of the offense charged. *Marsh*, 548 U.S. at 170–71. This leads to petitioner's second argument: that the weighing step is really an element of the offense.

Petitioner's second argument is as follows. The maximum punishment he could have received, based solely on the jury's verdict finding him guilty of first-degree murder at the guilt phase, was life imprisonment. Missouri's death penalty statute, as interpreted in *State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003), requires two additional findings of fact before petitioner could be sentenced to death: (1) that at least one statutory aggravating circumstance existed and (2) that the mitigating evidence does not outweigh the aggravating evidence. Petitioner is eligible for the death penalty only after the jury finds each fact beyond a reasonable doubt. Here, "the jury was never instructed that it was the state's burden to prove beyond a reasonable doubt that the evidence in mitigation does not outweigh the evidence in aggravation, and the jury never made this additional finding of fact, without which [petitioner] could not be lawfully sentenced to death." (#35 at 205.) This finding of fact is the functional equivalent of an element of a greater offense, the argument goes, and the trial court violated petitioner's right to have a jury determine—beyond a reasonable doubt—he is guilty of every element of the crime.

On direct appeal, the Missouri Supreme Court held that "[t]he reasonable doubt standard does not apply to mitigating evidence[.]" *Johnson*, 284 S.W.3d at 585. The court elaborated: "[Petitioner's] reliance on *Ring*, *Apprendi*, and *Whitfield* is misplaced. This Court has stated that under *Ring* and *Apprendi* only evidence functionally equivalent to an element, including statutory aggravating circumstances, must be found beyond a reasonable doubt." *Id.* Petitioner claims this decision is contrary to and an unreasonable application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002).

In *Apprendi*, the Supreme Court held that any fact other than a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Ring*, the Supreme Court held that capital defendants have a Sixth Amendment right to a jury determination of aggravating circumstances that make the defendant eligible for the death penalty. *Ring*, 536 U.S. at 589. The Court explained that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id.* at 602.

In *Whitfield*—purportedly applying *Apprendi* and *Ring*—the Missouri Supreme Court held that this evidentiary weighing step of the death sentencing process is a fact the jury must find before determining a defendant is death-eligible. *Whitfield*, 107 S.W.3d at 261. The next year, however, the Missouri Supreme Court explicitly held this weighing is *not* subject to the beyond a reasonable doubt standard. Specifically, the court stated

that "[n]othing in *Whitfield* . . . requires the jury to make findings [on the weighing of mitigating and aggravating evidence step] beyond a reasonable doubt." *State v. Glass*, 136 S.W.3d 496, 521 (Mo. banc 2004); *see also State v. Gill*, 167 S.W.3d 184, 193 (Mo. banc 2005); *State v. Zink*, 181 S.W.3d 66, 74 (Mo. banc 2005). Implicit in this holding is that the evidentiary weighing is not a fact *necessary to increase the range of punishment*. Otherwise, Missouri's death penalty statute—as interpreted by the Missouri Supreme Court—would violate *Ring*. *Ring* requires that a jury find beyond a reasonable doubt any facts necessary to increase a defendant's punishment. *Ring*, 536 U.S. at 602.

Again, on direct appeal, the Missouri Supreme Court held that this weighing "fact" at step three is not functionally equivalent to an element and is not subject to the beyond-a-reasonable-doubt standard. *Johnson*, 284 S.W.3d at 585. *Ring* instructs that the label (here, "functionally equivalent to an element") is irrelevant. 536 U.S. at 602. The dispositive question is whether Missouri law "makes an increase in a defendant's authorized punishment contingent on the finding of a fact[.]" *Id.* By finding that the weighing fact is not subject to the beyond a reasonable doubt standard, the Missouri Supreme Court answered the dispositive question in the negative. Thus, it is clear that *Whitfield* does not stand for the proposition that the weighing "fact" at step three is a fact necessary to increase the range of punishment. As a federal habeas court, the Court cannot reexamine this state-court interpretation of state law. *Groose*, 36 F.3d at 737.

In short, the jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance is present before a defendant is death-eligible—this is a fact necessary to increase the range of punishment. The jury need not find beyond a

reasonable doubt that mitigating evidence does not outweigh aggravating evidence, so says the Missouri Supreme Court, because this weighing apparently is not a fact necessary to increase the range of punishment. This Court may not reexamine that state court interpretation of state law. *Id.*

Third, petitioner seems to argue that the jury failed to find that the mitigating evidence did not outweigh the aggravating evidence. But the jury clearly found that fact: it sentenced petitioner to death. If the jury unanimously found that the mitigating evidence did outweigh the aggravating evidence, it would have sentenced petitioner to life imprisonment. It did not. If even one juror found that the mitigating evidence did outweigh the aggravating evidence, that juror could not have voted to sentence petitioner to death. In that case, the jury would have been unable to agree on punishment, and it would have returned a verdict reflecting this disagreement. For all these reasons, the Missouri Supreme Court's decision is not contrary to or an unreasonable application of clearly established federal law.

**Claim 18**

This is a claim of ineffective assistance of trial counsel at both the guilt and penalty phases "by failing to investigate, discover and present mental health evidence of diminished capacity[.]" Specifically, petitioner contends that counsel should have engaged experts to evaluate him for acute stress disorder as the basis for a diminished capacity defense in the guilt phase and as evidence in mitigation in the penalty phase. Petitioner explains that the main issue in the case was whether he deliberated in killing Sgt. McEntee and that his ability to deliberate was "seriously impaired" because of acute

stress disorder. In support of this claim, petitioner offers the post-conviction testimony of two psychologists who did in fact confirm the diagnosis of acute stress disorder, based in part on a more comprehensive investigation and evaluation of petitioner's exceedingly troubling social and family history.

This claim was denied by the post-conviction motion court, and the denial was affirmed by the Missouri Supreme Court on appeal. Having reviewed the record, this Court finds that the Supreme Court fairly and accurately summarized the evidence before the motion court, and its conclusions in affirming the motion court are fully supported by the evidence. The opinion states as follows:

> [Petitioner] asserts the motion court clearly erred in denying his claim that his trial counsel were ineffective for failing to investigate and present a diminished capacity defense. [Petitioner] claims counsel should have adduced testimony from two expert witnesses regarding his acute stress disorder (hereinafter, "ASD"), which would have demonstrated [petitioner] was not capable of deliberation. [Petitioner] believes that had counsel presented this evidence to the jury, there was a reasonable probability that the jury would have imposed a life sentence.
>
> [Petitioner] claims his trial counsel should have presented the testimony of psychologist Dr. Daniel Levin (hereinafter, "Dr. Levin") and Dr. Donald Cross (hereinafter, "Dr. Cross") to prove he suffered from ASD at the time of the murder. Both of [petitioner's] experts testified at the post-conviction hearing. Dr. Levin testified he was retained by post-conviction counsel to conduct a psychological evaluation of [petitioner] to determine whether he suffered from a mental impairment, mental illness, or mental defect at the time of the murder that would interfere with his ability to deliberate. In addition to the documents Dr. Levin reviewed in preparation for his trial testimony, Dr. Levin reviewed additional documents from the Division of Family Services and other records to form his opinion. Dr. Levin testified at the evidentiary hearing that he believed [petitioner] suffered from ASD at the time of the murder and that ASD would have impacted [petitioner's] ability to deliberate. Dr. Levin stated he could have prepared the same evaluation prior to trial.

Dr. Cross also was retained by post-conviction counsel to conduct a psychological evaluation of [petitioner]. Dr. Cross interviewed [petitioner] three times, interviewed other family members, and reviewed records. Dr. Cross testified it was his opinion [petitioner] was experiencing ASD at the time of the murder and that ASD would have impaired [petitioner's] ability to coolly reflect and make rational, reasonable decisions.

[Petitioner's] trial counsel also testified. Counsel Karen Kraft (hereinafter, "Kraft") testified she decided as a matter of trial strategy not to pursue a diminished capacity defense because she believed [petitioner's] story was compelling in relationship to the time the murder happened after his brother's death. Kraft stated that had the defense presented a mental health expert, the State would have sought its own evaluation of [petitioner]. Kraft testified she did not want to turn [petitioner's] story into one of competing mental health experts.

Counsel David Steele (hereinafter, "Steele") testified he did not want to present evidence of all of the specific instances of abuse and neglect [petitioner] suffered in his preschool years. Steele noted he believes a jury tends to have a certain tolerance and a certain time frame in which it is receptive to hearing evidence. Steele worried that he would lose the jury's attention and focus if it were to hear repetitive, cumulative evidence. Steele believed the jury could understand the emotions a person would go through after losing a brother and how those emotions would affect [petitioner's] ability to deliberate. Steele stated there were risks in making something too complex for the jury to follow and a risk the State's expert would testify [petitioner] did not suffer from a mental disease or defect. Accordingly, Steele testified there was a strategic decision made not to pursue a diminished capacity defense.

Counsel made a strategic decision as to how much evidence to present regarding [petitioner's] upbringing during the penalty phase. Counsel did not present expert testimony regarding [petitioner's] mental state, but counsel introduced testimony regarding [petitioner's] social history, which formed the basis for believing [petitioner] suffered from ASD. The jury heard that, as a young child, [petitioner] was abandoned by both of his parents, and he went without food, clothing and decent shelter due to his mother's neglect, which stemmed from her drug addiction. [Petitioner] was sent to live in a series of homes and was abused physically by his aunt. Those experiences caused psychological scars that were reopened by the death of his brother. Counsel also elicited evidence of [petitioner's] mental state at the time of the shooting.

The motion court made an extensive record of the evidentiary hearing on [petitioner's] Rule 29.15 motion. The motion court found there was a reasonable strategic decision for not presenting a diminished capacity defense. It further found that [petitioner] was not prejudiced because his counsel presented and argued evidence demonstrating his emotional state at the time of the murder. The motion court stated that Dr. Levin's testimony presented in the penalty phase was similar to the evidence which [petitioner] now claims should have been presented.

"The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Vaca v. State*, 314 S.W.3d 331, 335 (Mo. banc 2010) (*quoting Anderson*, 196 S.W.3d at 37). No matter how ill-fated it may appear in hindsight, a reasonable choice of trial strategy cannot serve as a basis for a claim of ineffective assistance. *Id.*

The record indicates trial counsel was aware of a potential diminished capacity defense. However, counsel made a deliberate choice to not pursue this strategy. Counsel was concerned that the jury would lose focus or become alienated. Counsel also knew that if they presented expert testimony regarding [petitioner's] diminished capacity, the State could then introduce its own experts, challenging the diagnosis of ASD. [Petitioner's] counsel presented testimony regarding [petitioner's] upbringing and the mental anguish he was feeling at the time of the shooting. Further, both of [petitioner's] trial counsel believed the State had robust evidence of deliberation.

"The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Henderson v. State*, 111 S.W.3d 537, 540 (Mo. App. W.D. 2003). Just because a jury returns a guilty verdict does not mean that defense counsel was ineffective. *Middleton v. State*, 103 S.W.3d 726, 737 (Mo. banc 2003). [Petitioner] has not overcome the strong presumption that counsel rendered adequate assistance, exercising reasonable professional judgment. *State v. Kinder*, 942 S.W.2d 313, 335 (Mo. banc 1996). Counsel were not ineffective for failing to present the testimony of Drs. Levin and Cross.

*Johnson*, 406 S.W.3d at 899–901. This Court agrees with the Missouri Supreme Court

that petitioner failed to overcome the strong presumption that trial counsel rendered

adequate assistance.  Given the "doubly deferential" standard for an ineffective assistance of trial counsel claim, this Court finds that the Missouri Supreme Court's decision is neither contrary to nor an unreasonable application of clearly established federal law.

Petitioner also asks for an evidentiary hearing (#94) on Claim 18.  Because this claim was adjudicated on the merits in state court, this Court's review under § 2254(d)(1) is limited to the record that was before the state court.  *Pinholster*, 563 U.S. at 181.  For the reasons explained above, the state court adjudication did not result in a decision that was contrary to or an unreasonable application of clearly established federal law.  This Court would be unable to consider any new evidence that results from discovery, so petitioner's request is denied.

**Claim 22**

This is a claim that petitioner's constitutional rights were violated "because Missouri's statutory scheme does not adequately define first-degree murder or meaningfully narrow the class of defendants who are eligible for the death penalty."  In other words, the Missouri death penalty statute is unconstitutionally vague.

Under Missouri law, deliberation distinguishes first- and second-degree murder. "A person commits . . . murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter."  RsMo. § 565.020.1.  Deliberation is defined as "cool reflection for any length of time no matter how brief[.]"  *Id.* § 565.002(5).  Petitioner claims "[t]here is no meaningful distinction between knowingly causing death and deliberating about it, because the 'deliberation' may take place immediately before or simultaneously with forming the intent to kill."  (#35 at 284.)  In

turn, this fails to narrow the class of death-eligible defendants, petitioner claims, as

"Missouri authorizes the death penalty for fully 76 percent of intentional homicides."

(#35 at 288.)  Finally, the argument goes, this gives rise to arbitrary enforcement.

On direct appeal, the Missouri Supreme Court held that the definition of

deliberation is not unconstitutionally vague.  *Johnson*, 284 S.W.3d at 572.  It also refused

to set aside petitioner's sentence due to prosecutorial discretion.  *Id.* at 578.  Petitioner

also raised this "well-worn argument" in his post-conviction motion, and the motion

court rejected it, noting that Missouri's death penalty statute has repeatedly been held

constitutional (#65-5 at 24–25).  On post-conviction appeal, the Missouri Supreme Court

held that claims challenging the constitutionality of the death penalty statute must be

raised on direct appeal and are not cognizable on post-conviction relief.  *Johnson*, 406

S.W.3d at 905–06.  Petitioner claims "he has sufficient 'cause' for any failure in his

attempt to broaden the facts on post-conviction review."  (#35 at 292.)

Petitioner claims these decisions are contrary to and unreasonable applications of

clearly established federal law.  This Court disagrees.  The Supreme Court has described

its review of death penalty eligibility and selection factors as "quite deferential":

"Because 'the proper degree of definition' of eligibility and selection factors often 'is not

susceptible of mathematical precision,' our vagueness review is quite deferential."

*Tuilaepa v. California*, 512 U.S. 967, 973 (1994) (*quoting Walton v. Arizona*, 497 U.S.

639, 655 (1990)).  It has also noted that, "[i]n providing for individualized sentencing, it

must be recognized that the States may adopt capital sentencing processes that rely upon

the jury, in its sound judgment, to exercise wide discretion."  *Id.*  With these principles in

mind, this Court agrees with every state court to consider the issue and finds that Missouri's death penalty statute does narrow the class of death-eligible defendants and is not arbitrarily enforced. Thus, the state court decisions are not contrary to or unreasonable applications of clearly established federal law.

**Claim 23**

This is a claim that the prosecutor's closing argument was improper in the guilt phase, and trial counsel failed to object. This is the same claim that petitioner brought under Claim 2, but this claim is framed as an ineffective assistance of counsel claim. Specifically, petitioner argues that trial counsel provided ineffective assistance of counsel by failing to object to the prosecutor's "conscious decision" argument during closing argument. On post-conviction appeal, the Missouri Supreme Court rejected petitioner's claim. *Johnson*, 406 S.W.3d at 904–05. The Missouri Supreme Court found that petitioner could not show prejudice because (1) the jury was properly instructed and (2) the prosecutor read the definition of deliberation in closing argument. *Id.* Petitioner claims this decision is an unreasonable application of *Strickland* (#35 at 288). *See* 28 U.S.C. § 2254(d)(1).

This Court agrees with the Missouri Supreme Court—petitioner cannot show prejudice. The jury was properly instructed on the element of deliberation, *Johnson*, 406 S.W.3d at 904, and it is assumed that the jury followed the instruction, *Tisius v. State*, 183 S.W.3d 207, 216 (Mo. banc 2006). During closing argument, the prosecutor read the definition of deliberation (as correctly defined in the statute) and argued why he believed the evidence showed that petitioner deliberated. *Johnson*, 406 S.W.3d at 904–05.

Because this Court finds that petitioner cannot show prejudice, the Missouri Supreme Court did not unreasonably apply *Strickland*.

Next, petitioner argues that the Missouri Supreme Court unreasonably determined the facts, see 28 U.S.C. § 2254(d)(2), when it concluded "[a]ny deficiencies in the [State's] argument were corrected by the trial court's instructions to the jury." *Johnson*, 406 S.W.3d at 905 (second alteration in original) (*quoting State v. Clemons*, 946 S.W.2d 206, 230 (Mo. banc 1997)). The jury was instructed that petitioner could be found guilty of first-degree murder only if he deliberated. The jury was also instructed that deliberation is defined as cool reflection for any length of time. According to petitioner, "[a]n instruction defining 'deliberation' as 'cool reflection' cannot cure the [prosecutor's alleged error of equating cool reflection and conscious decision], because it does not contradict the prosecutor's argument that a 'conscious decision' means 'cool reflection.'" (# 142 at 4.)

As best this Court can tell, this is really a legal argument framed as a factual one. The Missouri Supreme Court made a legal conclusion—that petitioner was not prejudiced under *Strickland*—in light of the proper instruction. For the reasons explained above, the Missouri Supreme Court did not unreasonably apply *Strickland*. If this was indeed a factual determination, this Court finds that it was not unreasonable.

**Claim 26**

This is a claim that petitioner's constitutional "rights were violated by the cumulative effect of the errors described in [his] petition, thereby invalidating his conviction and death sentence." Petitioner acknowledges the Eighth Circuit has held "a

habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (*quoting Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002)). Thus, this claim fails.

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Habeas Corpus (#35), Motion for Discovery (#91), and Motion for Evidentiary Hearing (#94) are all denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Kevin Johnson's Petition for Habeas Corpus (#35) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner Kevin Johnson's Motion for Discovery (#91) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner Kevin Johnson's Motion for Evidentiary Hearing (#94) is **DENIED**.

Dated this 15<u>th</u> day of June 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE