UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN JOHNSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | Case No. 4:13CV02046 SNLJ |
| TROY STEELE, | ) | |
| Respondent. | ) | |

## **MEMORANDUM and ORDER**

Petitioner Kevin Johnson seeks a certificate of appealability on this Court's adjudication of claims 1, 5, 16, 18, 19, 20, and 21. This Court found that claims 1, 5, 16 and 18 were previously denied in a reasonable state court decision. This Court also found that claims 19, 20, and 21 were procedurally defaulted and that Johnson cannot overcome this default because the claims are not substantial.

## **STANDARD OF REVIEW**

State prisoners have no right to an appeal. 28 U.S.C. § 2253(c)(1). A district court may grant certificate of appealability "*only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added). A petitioner satisfies this standard if the district court's ruling is "debatable among jurists of reason," that is, if "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that jurists of reason could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003), citing *Slack v. McDaniel*, 529 U. S. 473, 484 (2000).

## ANALYSIS

### I. Denial of Procedurally Defaulted Claims, 19, 20, and 21.

Johnson concedes that Grounds 19, 20, and 21 – all based on ineffective assistance of trial counsel – were procedurally defaulted. This Court held that Johnson did not meet the requirements of *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the default because the defaulted claims were not substantial.[1] Johnson disputes the Court's determination, arguing that the default claims are substantial and that post-conviction counsels were ineffective for failing to raise them. In support, Johnson restates the same arguments he previously raised and that were rejected by this Court in its Amended Memorandum and Order.

**Claim 19**

Johnson argues that the Court erred in denying his defaulted claim that trial counsel was ineffective for failing to investigate, develop and present additional evidence of abuse in Johnson's upbringing during the guilt phase and as mitigating evidence during the penalty phase. This Court held that

> . . .the wholly defaulted Claim 19 [is] not excused under the narrow exception of *Martinez*. There is no substantial showing of the denial of the constitutional right of effective assistance of counsel. To be sure, petitioner points out a number of specific incidents of child abuse and neglect that were discovered by post-conviction counsel and post-conviction appeal counsel. But the record shows that trial counsel did in fact conduct a reasonable investigation into petitioner's

---
[1] The Court also recognized that portion of Claim 20 – specific to the conviction – was raised before the post-conviction motion court but not the *appeal*, and concurred with the motion court's finding that trial counsel acted competently.

2

childhood, including their receipt and review of more than 1600 pages of juvenile records. Furthermore, trial counsel made a strategic choice to relate petitioner's history of childhood abuse through his grandmother, aunt, and the social workers and doctors who cared for him. The additional evidence petitioner now offers merely bolsters that which was already introduced in mitigation. As such, petitioner cannot establish *Strickland* prejudice.

Again, petitioner's position on his application for certificate of appealability is nothing more than reargument of his claim under *Martinez*. There is no *Strickland* prejudice nor a substantial showing of the denial of a constitutional right.

**Claim 20**

Johnson argues that the Court erred in denying his defaulted claim that trial counsel was ineffective for not investigating and presenting additional bad character evidence against the victim, Sgt. McEntee, and other police officers. Johnson raised a portion of this claim -- limited to Sgt. McEntee's character -- in his Rule 29.15 motion but expanded the claim in this proceeding to include additional legal argument and facts pertaining to other officers and the Kirkwood Police Department in general. To the extent the claim was raised in the Rule 29.15 motion, this Court agreed with the motion court, "that trial counsel acted competently in raising the issue only briefly as opposed to attacking the victim and the police department as a central feature of the defense case." Regarding the procedurally defaulted part of the claim, and having closely reviewed the record and the new facts alleged from additional, post-trial investigations, this Court was of the same opinion -- that it was strategically appropriate not to attack the victim and the police department as a central feature of the defense case. Indeed, Johnson, himself, would have refuted the allegations of McEntee's bad character. During the police

3

interview, Johnson acknowledged that he did not have any problems with Sgt. McEntee, that McEntee was always smiling, and that he treated Johnson with respect in an earlier encounter. For these reasons, there was no ineffective assistance of counsel nor a substantial showing of the denial of a constitutional right.

**Claim 21**

Next is a defaulted claim of ineffective assistance of trial counsel "by failing to investigate, develop, and present evidence that Johnson witnessed and suffered from pervasive community violence throughout his upbringing." As this Court found, however, and as noted in Claim 19, counsel did, in fact, introduce substantial evidence of petitioner's childhood experiences of abuse and neglect. And in fact, this evidence overlapped with and was in many respects representative of the violence in the community at large, as least as described by petitioner. As the Eighth Circuit has held, it is not enough to demonstrate ineffective assistance of counsel simply because other counsel might have focused on different or additional details. *Ringo v. Roper*, 472 F.3d 1001, 1007 (8th Cir. 2007). There was no ineffective assistance of counsel, nor a substantial showing of the denial of a constitutional right.

  II.     **Denial of State Court Adjudicated Claims 1, 5, 16 and 1**8

For each of these claims, like the procedurally defaulted claims, Johnson essentially restates the same argument that he raised, and that were rejected by this Court in its Amended Memorandum and Order. Each of these claims were rejected because they did not involve an unreasonable application of clearly established federal law.

4

**Claim 1**

This is a claim that that trial court erred in allowing the state to use a peremptory strike to remove African-American venire person Cottman over Johnson's *Batson* objection. After Johnson objected to the strike, the state offered two reasons to justify it: 1) that Cottman was hesitant to answer questions about capital punishment, and 2) that she worked for Annie Malone Children's Home, which had provided services to Johnson when he was a child. Johnson's only attempt to show the strike was pretextual was to point out that the state struck a white venire person who also had worked for a foster care program, though a different program than Annie Malone's. In rejecting the *Batson* challenge, the trial court found the prosecutor's race-neutral explanation for the strike to be credible and that Cottman was not similarly situated with the white venire person who was not struck. The Supreme Court of Missouri affirmed on direct appeal. This Court in turn deferred to the decision of the state courts finding that "the state court adjudication did not result in a decision that involved an unreasonable application of clearly established law." Johnson has not made a substantial showing of the denial of a constitutional right.

In a related argument, Johnson contended that 'the state court refused to consider the St. Louis County Prosecutor's Office troubling history of excluding black jurors," citing *Miller-El v. Dretke*, 545 U.S. 231 (2005). It is enough to deny the claim that Johnson relied mainly on appellate cases and newspaper articles that were not before the trial court, and many that were not in front of the Missouri Supreme Court on appeal. Furthermore, as this Court observed, *Miller-El* -- a case from Texas -- "involved

5

multiple ways in which the prosecutor's office sought to keep African-Americans off juries, well beyond a comparison of 'similarly situated' venirepersons," and that "[t]hese other factors . . .showed intentional discrimination." This Court then concluded that "*Miller-El*, with its egregious facts, is altogether distinguishable from the case at hand. . .and that none of the factors that gave rise to the intentional discrimination finding in that case are present here." Again, Johnson has not made a substantial showing of the denial of a constitutional right.

**Claim 5**

This is a claim of ineffective assistance of trial counsel because of counsel's failure to object to the presence of uniformed police officers in the courtroom throughout the trial. As noted in this Court's Amended Memorandum and Order, the Missouri Supreme Court rejected the claim, holding that petitioner failed "to present any fact that would support the ultimate conclusion that the presence of officers in the courthouse could have influenced the outcome of Johnson's trial." The parties briefed the issue as if Johnson had procedurally defaulted on the claim because facts alleged were insufficient to warrant relief, but this Court, after a close reading of the Supreme Court opinion, determined that the Court decided the issue on the merits. Specifically, this Court held:

> Here, the Missouri Supreme Court's analysis was more than petitioner failed to plead sufficient facts to warrant relief, and it instead evaluated the *Strickland* prejudice prong on the merits. In particular, the Missouri Supreme Court explained that the jury was sequestered throughout the trial and had no contact with any spectators. It pointed out that no officer caused any disturbance. It also noted that "[d]uring the course of any trial, there could be a large number of uniformed police officers in the courthouse and walking in the hallways. Police officers are frequently called to testify in trials, which requires their presence in the courthouse." Finally, it affirmed

6

> the motion court, which explicitly found that petitioner "failed to
> demonstrate prejudice." Thus, this claim was adjudicated on the merits
> and is entitled to deference under the AEDPA. For the reasons explained
> above, this Court finds that the Missouri Supreme Court's decision is
> not an unreasonable application of or contrary to clearly established
> Supreme Court precedent. [citations omitted.]

This Court added that even if the claim was procedurally defaulted by failing to plead facts that warranted relief, the defaulted claim was not a substantial one which *Martinez* requires. On reargument, this Court added that "there is no clearly established federal law governing possible prejudicial conduct of courtroom spectators," citing *Carey v. Musladin,* 549 U.S. 70, 76-77 (2006).

Johnson's main focus in this application, however, is that two of the seven Missouri Supreme Court judges dissented from the majority on this issue and would have remanded for an evidentiary hearing. This circumstance, they explain, necessarily means that reasonable jurists could debate whether the habeas petition should have been resolved differently and that the issue presented is one that is "adequate to deserve encouragement to proceed further." To the contrary, the state argues that, "Even though two Missouri judges disagreed in considering the merits during Johnson's appeal, reasonable jurists could not disagree with this Court's finding that the state court's majority decision was a reasonable application of Supreme Court precedent under AEDPA's highly deferential standard." This Court is firmly convinced of the soundness of its ruling. The question is not whether reasonable jurists could disagree on the merits of the issue -- surely the answer to that question is yes. But the question instead is whether reasonable jurists could question this Court's ruling that the Supreme Court's

majority decision was reasonable. This Court was not charged with ruling on the merits of the issue, that is, whether the ruling was correct, but simply whether the majority had reasonable grounds for its decision. And on that separate issue, this Court cannot fathom any reasonable disagreement. Again, there is no binding U. S. Supreme Court precedent that would have controlled the Missouri Supreme Court's decision, so the state decision was entitled to deference. In the end, Johnson is asking for an automatic certificate of appealability any time there is a dissenting opinion to a state court majority opinion. But that is wholly contrary to the notion of AEDPA deference.

**Claim 16**

This is a challenge to the constitutionality of Missouri's death penalty instructions. Johnson specifically claims that, "the jury unconstitutionally sentenced him to death without finding, beyond a reasonable doubt, that the mitigating circumstances were insufficient to outweigh the aggravating circumstances, which the Missouri Supreme Court defined as a death-qualifying factual issue four years before Petitioner's trial." To be sure, that was the holding in *State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003). But as noted in this Court's memorandum and order, the Supreme Court has rejected that requirement several times since then, clearly, if not expressly, overruling *Whitfield*. Moreover, the Supreme Court's change is consistent with the post-*Whitfield* holding of the U. S. Supreme Court that "a State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed." *Kansas v. Marsh*, 548 U.S. 163, 174 (2006). There is simply no question

of the state of Missouri law on this point, and reasonable jurists could not argue to the contrary.

**Claim 18**

Here, Johnson reasserts his rejected state court claim that trial counsel was ineffective for not pursuing a diminished capacity defense during both phases of trial. Trial counsel was aware of a possible diminished capacity defense, but opted instead for what they perceived was "an emotionally compelling story arising out of Johnson's brother's death, which would be more understandable and relatable to the jury." Further, trial counsel explained that they did not want to get into a battle of the experts on Johnson's mental health condition. This Court agreed with the state court decision that Johnson did not overcome the "strong presumption" that counsel performed effectively. Invoking the "doubly deferential" standard governing ineffective assistance claims on federal habeas review, this Court concluded that the state court ruling did not contradict or unreasonably apply clearly established federal law. No reasonable jurist would disagree.

## CONCLUSION

For the foregoing reasons, the application for certificate of appealability is denied in all respects.

**SO ORDERED** this 21st day of November, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE